**AMERICAN MOTORISTS INSURANCE COMPANY, Appellant,**

**&**

**Atlantic Mutual Insurance Company, Counterclaim–Defendant,**

**v.**

**LEVOLOR LORENTZEN, INC.**

No. 89–5093.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) June 29, 1989.

Decided July 11, 1989.

---

Timothy C. Russell, Patricia A. Gotschalk, Scott P. Boylan, Thomas S. Schaufelberger, Drinker, Biddle & Reath, Washington, D.C., for appellant.

James A. Flynn, Richard E. Kummer, Kummer, Knox & Naughton, Parsippany, N.J., for Levolor Lorentzen, Inc.

Kevin E. Wolff, Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, Livingston, N.J., for Atlantic Mut. Ins. Co.

Thomas W. Brunner, Laura A. Foggan, Frederick S. Ansell, Wiley, Rein & Fielding, Washington, D.C., for amicus curiae Ins. Environmental Litigation Ass'n.

Joanne B. Grossman, Keith A. Teel, William F. Greaney, Steven G. Bradbury, Covington & Burling, Washington, D.C., for amicus curiae The Chemical Mfrs. Ass'n, Ciba–Geigy Corp., E.I. DuPont De Nemours & Co., ICI Americas, Inc., Intern. Business Machines Corp., Nestle' Foods Corp., Nabisco Brands, Inc., Richardson–Vicks, Inc., and Westinghouse Elec. Corp.

Before MANSMANN, GREENBERG and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

Appellant, American Motorist Insurance Company (AMICO), brought this diversity action in the United States District Court for the District of Maryland against Levolor Lorentzen, Inc. seeking a declaratory judgment that it had no obligation to indemnify or defend Levolor with respect to certain claims asserted against it by the United States Environmental Protection Agency (EPA). These claims arose because hazardous substances generated by Levolor may have been deposited into a quarry in Maryland that was placed on the National Priorities List in December 1982 pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* (CERCLA). The complaint sought a declaratory judgment that AMICO had no duty to defend or indemnify Levolor as there was no "suit" pending against Levolor seeking damages, Levolor's potential liability was not the result of an "occurrence," or "accident" and was not for "property damage" within the meaning of the policies, no event had triggered coverage, and the "pollution exclusions" in the policies precluded coverage. Levolor counterclaimed seeking "a declaratory judgment ordering AMICO to defend and indemnify" it and "to pay damages incurred by [it] as a result of [AMICO's] breach" of its duty to provide coverage.

On Levolor's motion the case was transferred to the District of New Jersey where it made a motion for partial summary judgment and AMICO made a cross motion for summary judgment. On October 14, 1988, the district court in an opinion and accompanying order, ruled on these motions. *American Motorists Ins. Co. v. Levolor Lorentzen, Inc.*, No. 88–1994, 1988 WL 112142 (D.N.J. Oct. 14, 1988). In its opinion it recited that Levolor was AMICO's insured under a series of annual comprehensive general liability policies starting in 1980.[1] It recited that the EPA had informed Levolor of its potential liability under CERCLA as a potentially responsible party because industrial waste it generated was, after intermediate transfers, deposited at the Maryland site.

The court recited that on October 23, 1987, Levolor entered into a consent decree with other potentially responsible parties

---

1. We have somewhat expanded on the district court's statement of the facts on the basis of our study of the record. Atlantic Mutual Insurance Company, though not originally a party, was brought into the case when Levolor filed an amended counterclaim seeking to enforce its rights under certain insurance policies Atlantic Mutual issued which Levolor claimed were applicable to the EPA proceedings. Atlantic Mutual has not participated in this appeal and inasmuch as its presence as a party does not affect our result no further reference will be made to it.

under which it assumed partial responsibility for the implementation and funding of the investigatory and remedial measures mandated by the EPA in Phase I of the cleanup of the Maryland site. Furthermore, Levolor's cooperation in negotiation with the other parties was necessary for a determination of the parties' respective liabilities for Phase II of the cleanup. Thereafter, on or about February 5, 1988, the United States, on behalf of the EPA, brought an action against Levolor and the other potentially responsible parties under 42 U.S.C. §§ 9606(a), and 9607(a)(4)(A), and (B) so that a consent decree could be entered to provide for a mechanism to enforce the settlement if necessary.[2]

The district court further indicated that when Levolor was notified of its potential liability in 1986, it informed AMICO and requested indemnity and defense under its policies. AMICO reserved its rights and Levolor retained outside counsel to represent it in the negotiations with the other potentially responsible parties and the EPA. In February 1987, AMICO declined coverage and brought this action.

The district court set forth that the parties agreed that New York law was applicable to the coverage issues. It found that there was no dispute of material fact with respect to Levolor's liability under the consent decree for cleanup costs or with respect to the terms of the insurance policies which required AMICO to pay all sums which Levolor became legally obligated to pay "as damages" because of bodily injury or property damage to which the insurance applied. The court held that the New York Court of Appeals would construe "damages" to include "statutorily-mandated cleanup operations." Thus, the New York Court would hold that an insurer liable under its policies to pay for damages to property would be "obligated to indemnify the insured for the remedial expenses imposed by CERCLA." Accordingly, inasmuch as the district court concluded "that the cleanup costs imposed on Levolor for the Maryland site constitute 'damages' within the terms of the policies providing coverage to Levolor," it denied AMICO's motion for summary judgment. *American Motorists Ins. Co. v. Levolor Lorentzen, Inc.,* No. 88–1994, slip op. at 8–9 (D.N.J. Oct. 14, 1988).

The court next considered and denied Levolor's motion for partial summary judgment "regarding AMICO's obligation to indemnify Levolor for sums it is legally obligated to pay as damages...." The denial was predicated on its conclusion that there was "a genuine issue of material fact with respect to the timing of any 'occurrences' under the terms of the policy coverage." It then indicated, quite significantly in regard to our disposition of the case, as follows:

> Because the existence of a dispute of material fact with respect to when an 'occurrence' might have taken place precludes summary judgment on the issue of indemnification, this court need not reach the issue of whether the claim for cleanup costs falls under the pollution exclusion clause of the policies. However, the applicability of the clause has a significant impact on the issue of AMICO's obligation to provide a defense.
>
> The pollution exclusion clause provides that the policies do not apply
>
> > to [claims of] bodily injury or property damage arising out of the discharge, dispersal, release or escape of ... contaminants or pollutants into or upon land ...; but this exclusion does not apply if such discharge, dispersal, release, or escape is sudden and accidental.
>
> Thus, a three-step analysis is necessary. First, coverage must exist under the general terms of the policy: there must be an occurrence resulting in property damage for which Levolor is legally obligated to pay damages. Next, the court must inquire whether the injury was caused by a release of pollutants. If it was, coverage will not apply unless the release was 'sudden' and 'accidental'.

*American Motorists Ins. Co. v. Levolor Lorentzen, Inc.,* No. 88–1994, slip op. at 16 (D.N.J. Oct. 14, 1988).

---

**2.** Apparently Levolor entered into the consent decree before the EPA action was filed.

The court said that there were insufficient facts to determine whether or not the pollution exclusion applied because it was unclear as to how and when the site was initially contaminated, and if there was reason to believe that the hazardous wastes would ultimately be released into the atmosphere, water, or land, then the contamination could hardly be called "accidental" or "sudden." On the other hand, it concluded that if none of the parties involved "reasonably foresaw the release of the contaminants, then the pollution would have occurred accidentally and coverage could not be denied under the pollution exclusion clause. Likewise, whether or not the discharge of pollutants was 'sudden' is a question of fact that cannot be decided on the facts as alleged." Accordingly, the district court concluded that there was a possibility that AMICO would be obligated to indemnify Levolor. Furthermore, it held that the duty to defend was triggered when Levolor was notified that it was a potentially responsible party by the EPA. In view of its conclusions, the court entered an order denying AMICO's motion for summary judgment and Levolor's motion for partial summary judgment for indemnification but granting Levolor's motion for partial summary judgment "with respect to the issue of the obligation of [AMICO] to provide a defense. . . ."

AMICO filed a motion for reconsideration which the district court denied in an opinion and order of January 5, 1989. In its opinion the court reiterated that "there simply are not enough facts available to make a determination as a matter of law as to whether or not the discharge was 'sudden' within the meaning of the pollution exclusion clause. . . ." *American Motorists Ins. Co. v. Levolor Lorentzen, Inc.*, No. 88–1994, slip op. at 8 (Jan. 5, 1989). On January 20, 1989, AMICO moved for entry of a final judgment under Fed.R.Civ.P. 54(b), but on February 2, 1989, prior to the ruling on its motion of January 20, 1989, it appealed from the orders of October 14, 1988, and January 5, 1989.

There was a rather obvious jurisdictional problem raised by the notice of appeal as the orders of the district court did not terminate the matter in the district court and the orders from which the appeal was taken had not been certified as final under Fed.R.Civ.P. 54(b). Consequently, on February 14, 1989, the clerk of this court wrote the parties and advised them that the matter would be submitted to a panel of the court for possible dismissal. The parties were, however, given the opportunity to comment on the jurisdictional question. Levolor responded that the collateral order doctrine, which in limited situations permits appeals prior to the entry of final judgment, *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), did not apply, and that in the absence of a certification under Fed.R.Civ. P. 54(b) there was no appealable order. It thus asked the court to "dismiss the appeal for lack of appellate jurisdiction." AMICO, however, urged that we have jurisdiction under the collateral order doctrine. After the receipt of these submissions the court did not immediately rule on the jurisdictional question, the matter being referred to the merits panel.

On March 22, 1989, in an opinion and order, the district court granted AMICO's motion for certification under Fed.R.Civ.P. 54(b). It said that under New York law, "AMICO's contractual duty to provide a defense to Levolor is clearly distinct and separable from its duty to indemnify Levolor." The court further found that there was no just cause for delay in entry of the judgment. Levolor, however, requested a stay of discovery with respect to the remaining proceedings in the district court as it conceived that appellate resolution in favor of AMICO on the "duty to defend" issue would be likely to end the case. AMICO opposed the application for the stay as under New York law its duty to defend would terminate if it were able to "confine the claim" by "excluding the possibility of recovery for which it has provided insurance." *American Motorist Ins. Co. v. Levolor Lorentzen, Inc.*, No. 88–1994, slip op. at 6 (D.N.J. March 22, 1989); *see American Home Prods. Corp. v. Liberty Mut. Ins. Co.*, 565 F.Supp. 1485, 1499 (S.D.N.Y.1983), *aff'd as modified*, 748 F.2d 760 (2d Cir.

1984). Thus, AMICO urged that a stay of discovery would prevent it from discovering facts needed to confine the claim, thereby prejudicing it by extending the time during which it would be obliged to reimburse Levolor for defense costs. The district court apparently agreed with AMICO as it denied a stay of discovery on the ground that to grant it "may unduly prolong the litigation."

■ In their briefs the parties agree that in view of the certification under Fed.R. Civ.P. 54(b) we have jurisdiction under 28 U.S.C. § 1291.[3] Nevertheless, we have the responsibility to satisfy ourselves of our jurisdiction, see *Thermice Corp. v. Vistron Corp.*, 832 F.2d 248, 251 (3d Cir.1987); *McNasby v. Crown Cork and Seal Co.*, 832 F.2d 47, 49 (3d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1112, 99 L.Ed.2d 273 (1988), and, if it is found lacking, dismiss the appeal. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379–80, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981).

When we examined the briefs and the record it was evident that notwithstanding the certification under Fed.R.Civ.P. 54(b) a jurisdictional problem remained. The certification and alleged final judgment, of course, relate only to the duty to defend. But even on this issue it appeared that there might not be a final judgment for, as AMICO urged, and the district court seemed to agree, that duty would terminate if AMICO could show that there was no possibility of recovery within the policy. *See American Homes Products Corp.*, 565 F.Supp. at 1499.

The nonfinal character of the determination of the duty to defend was highlighted in AMICO's brief which included a section entitled: "The 'pollution exclusion' precludes any defense obligation under the AMICO policies." Brief at 29. The brief then contended that under the plain language of the exclusion the releases at the site could not be regarded as sudden and accidental so "that the pollution exclusion

therefore precludes any defense obligation." Brief at 30. It was thus urged that the "district court erred in determining that any issue of fact precludes a determination that the 'pollution exclusion' applies." Brief at 35.

Accordingly, the appeal was being presented as being from a final judgment even though AMICO set forth that its motion for summary judgment was denied because the court found that there was a dispute of material fact. The jurisdictional difficulty was manifest: an order denying summary judgment because of a dispute of material fact is the very antithesis of a final judgment as it leaves the matter in dispute for later resolution. Thus, at our request the clerk of the court again wrote the parties, advising them of our concerns and directing them to respond.

The parties' responses were essentially that the duty to defend and the duty to indemnify are separate undertakings and that the duty to defend when the underlying proceedings are commenced is a current obligation continuing as long as the underlying case goes on or until "the carrier may *terminate* its ongoing duty to defend by demonstrating that there is no possibility under law or fact that it would be obligated to indemnify its insured under any provision of its policy." Letter from attorneys for Levolor to court (June 13, 1989) at 2. Accordingly, once there is an initial determination of the duty to defend a later ruling "does not void the duty to defend *ab initio* or render the issues involved in its determination moot." *Id.* Furthermore, "the existence of a 'duty to defend' is determined by comparing the allegations of the third-party liability complaint to the policy; if the complaint, on its face, states a claim *potentially* within the coverage of the policy, the insurer has a duty to defend the claim." Letter from attorneys for AMICO to court (June 14, 1989) at 8. Accordingly, the " 'duty to defend' determination ordinarily is made at

---

**3.** If there previously had not been jurisdiction, a valid certification under Fed.R.Civ.P. 54(b) would have cured the jurisdictional defect. *See Cape May Greene, Inc. v. Warren,* 698 F.2d 179, 185 (3d Cir.1983); *Dawson v. Chrysler Corp.,* 630 F.2d 950, 955 n. 4 (3d Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).

or near the outset of a coverage case, without reference to the question whether any 'duty to indemnify' actually exists." *Id.* at 9. Thus, there is a duty to defend separate from the duty to indemnify which "may be separately enforced on a current basis." *Id.*

■ In considering our jurisdiction we recognize that, as the parties emphasize, the duty to defend and the duty to indemnify are distinct under New York law. *Servidone Construction Corp. v. Security Ins. Co.,* 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441, 444 (1985); *see also Imperial Casualty and Indem. Co. v. High Concrete Structures, Inc.,* 858 F.2d 128, 131–32 (3d Cir.1988); *Beckwith Machinery Co. v. Travelers Indemnity Co.,* 815 F.2d 286, 292, 293 (3d Cir.1987) (Gibbons, C.J., dissenting); *ACandS, Inc. v. Aetna Cas. & Sur. Co.,* 666 F.2d 819 (3d Cir.1981). Thus, if, at a preliminary stage in a proceeding at which, as here, both the duty to defend and the duty to indemnify are in dispute, there is a resolution of all issues relating to the duty to defend, we will assume that the resultant order may be certified as final under Fed.R.Civ.P. 54(b). Here, however, the district court dealt with three separate objections raised by AMICO in response to the assertion that it should defend: (1) there was no claim for "damages" in the EPA proceedings; (2) the pollution exclusion was applicable; and (3) no "suit" had been brought triggering its objection to defend.[4] The district court made determinations on the first and third issues which were adverse to AMICO, and thus we will assume that if AMICO had not raised the pollution exclusion in the district court as a basis not to defend, its orders of October 14, 1988, and January 5, 1989, could have been certified as final. But on the summary judgment motions the court could not determine whether the pollution exclusion was applicable. Accordingly, AMICO did not establish that it was not obliged to defend and, unless and until it could, it was obligated to do so.

In the circumstances we cannot understand how the ruling on AMICO's duty to defend can be deemed final. While the court did place the initial burden to defend on AMICO rather than Levolor, this was subject to termination when the court made a final determination on the applicability of the pollution exclusion. While undoubtedly this "obligation to defend [was] a current one" "independent of the facts of the underlying causes," *see ACandS, Inc.,* 666 F.2d at 823, the district court did not make a final determination of whether AMICO had a duty to defend.

Thus, if AMICO is successful in advancing the pollution exclusion, undeniably the initial determination that it had a duty to defend will, regardless of the form of any new order, be effectively altered and revised because the order of October 14, 1988, granted Levolor's motion for partial summary judgment "with respect to the issue of the obligation of [AMICO] to provide a defense" and that obligation will no longer exist. Accordingly, the fact that the order of October 14, 1988, may not be voided *ab initio* or be rendered moot by a determination in favor of AMICO on the pollution exclusion is simply immaterial in a determination of whether that order is final. Therefore, regardless of the rights and duties of the parties under New York law, under federal law, which is applicable to our jurisdictional determination, the determination was not final. *See Budinich v. Becton Dickinson and Co.,* 486 U.S. 196, 108 S.Ct. 1717, 1720, 100 L.Ed.2d 178 (1988). Indeed, we find it anomalous that the district court certified as final, orders which it recognized might be altered, since Fed.R.Civ.P. 54(b) indicates that in the absence of a certification under the rule an order adjudicating fewer than all the claims or the rights and liabilities of fewer than all the parties "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Here the

4. The court denied Levolor's motion for partial summary judgment because there was a dispute of facts as to the timing of any "occurrence." We, however, will not consider this issue further as it is not discussed in the parties' briefs as an independent matter with respect to the duty to defend and no conclusion which we could reach regarding it could change our result.

court contemplated that the revision might follow rather than precede the certification under Fed.R.Civ.P. 54(b).

We also point out that when the court made its initial decision that AMICO had a current obligation to defend it recognized that a specific issue, the applicability of the pollution exclusion, had been raised which could terminate the obligation. Thus, the possible basis to end the obligation to defend was not dependent on some remote, speculative circumstance such as a loss of coverage because of the insured's failure to cooperate in the defense. In the circumstances there is no doubt but that the district court made a certification of finality in the midst of an ongoing controversy.

This case is unusual in that ordinarily the question of the appropriateness of a certification under Fed.R.Civ.P. 54(b) arises with respect to issues advanced by a party seeking a recovery rather than one seeking to avoid liability. Thus, in setting the standards for a certification under Fed.R.Civ.P. 54(b), we have indicated that the court must determine whether there "are multiple claims or merely alternative legal theories supporting a single claim." *Allegheny County Sanitary Auth. v. United States EPA*, 732 F.2d 1167, 1172 (3d Cir.1984). If a plaintiff advances multiple claims then there may be a certification under Fed.R. Civ.P. 54(b) when there is a final determination of one of them. But if a plaintiff presents a number of alternative legal theories to support a single recovery there is only one claim and there can be no certification. " 'The threshold issue, therefore, is whether the order appealed from finally resolved at least one entire claim, leaving at least one separate claim unresolved.' " *Allegheny County*, 732 F.2d at 1172 (quoting *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 440 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978)).

This distinction between claims and theories is critical, for the Supreme Court has indicated that a district court cannot certify a matter as final under Fed.R.Civ.P. 54(b) unless the judgment is a decision upon a cognizable claim for relief and is final in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claim action. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980). Furthermore, the determination of what is a final decision under 28 U.S.C. § 1291 is "a matter of federal law." *Budinich*, 108 S.Ct. at 1720.

We do not see why the same analysis should not be undertaken when a party seeking to avoid liability has advanced several legal theories in support of its position. AMICO's "claim" is that it does not have to defend Levolor and it supports this claim with several theories. Thus, it asks us to reverse because the EPA has not sought "damages," the pollution exclusion is applicable, and the EPA has not instituted a suit. It urges that if it is correct on any of the three theories, it has no obligation to defend. But the theories of why it does not have to defend are not its claim. Rather, its claim is that it does not have to defend. Therefore we conclude that the orders of October 14, 1988, and January 5, 1989, could not be certified as final for two separate though related reasons: they originally did not purport to make an ultimate disposition of an individual claim and they were entered subject to being revised in later proceedings before a final judgment on all issues.

We recognize, as pointed out by AMICO, that until such time as there is a final determination on AMICO's claim that it does not have to defend it may incur expenses not recoverable if it obtains a reversal, even if the appellate decision is predicated on a conclusion that AMICO was entitled to summary judgment on its original motion. But the same thing might be true even if we now had jurisdiction and AMICO continued to defend Levolor during the appeal. Of course, we cannot now predict how future events will develop, and thus we will not speculate on the allocation of defense costs being incurred.

But even if we assume that AMICO, though ultimately successful in an appeal from the orders of October 14, 1988, and January 5, 1989, will be unable to recover

expenses now accruing our result would not be changed. It is not unusual for a preliminary and initially nonappealable order to affect a party's rights. Thus, in *Demenus v. Tinton 35 Inc.*, 873 F.2d 50 (3d Cir.1989), we held that an interlocutory order discharging a notice of lis pendens could not be appealed during the pendency of the case as it was not a final order under the collateral order doctrine. Obviously the discharge in *Demenus* was very significant because the plaintiffs sought the imposition of a constructive trust giving them partial ownership of the properties and the filing acted as a constructive notice to any would-be purchaser of the property that a conveyance would be subject to the outcome of the litigation. In any event, we think that the consideration that AMICO may be accruing nonrecoverable defense expenses relates not to the finality of the order in the context of a Fed.R.Civ.P. 54(b) determination but, if germane at all to our jurisdiction, to the collateral order doctrine, to which we now turn.

■ As we previously indicated AMICO originally relied on the collateral order doctrine as the basis for our jurisdiction. Though in its merits brief it did not advance that basis for jurisdiction, in its letter of June 14, 1989, at 3 n. 1, it indicated that it "continues to subscribe to the view that the district court's 'duty to defend' determination is appealable under [the collateral order] doctrine." As we indicated in *Demenus v. Tinton 35 Inc.*, 873 F.2d at 52, an order is appealable under the collateral order doctrine only if it satisfies three conditions: it must (1) conclusively determine the disputed question; (2) resolve an important issue completely separate from the merits of the action; and (3) be effectively unreviewable on appeal from a final judgment. *See also The Nemours Foundation*

*v. Manganaro Corp.*, 878 F.2d 98 (3d Cir. 1989).

Here *none* of the conditions of the collateral order doctrine have been satisfied. First, AMICO's duty to defend has not been conclusively determined.[5] Second, the issue regarding the pollution exclusion raised by AMICO as a defense to its duty to defend also relates to the duty to indemnify. This is, of course, also true with respect to the court's finding that the claim made against Levolor was for "damages." Thus, while the duty to indemnify is distinct from the duty to defend, both relate to an underlying claim for damages so that a finding already made in the district court that damages have been claimed against Levolor cannot possibly be completely separate from the merits of the case.[6] Third, AMICO will be able to have an effective review after the final judgment in the action. We are merely delaying an opportunity for that review; but under the district court's order, whether the review is delayed or not pending further proceedings in the district court, AMICO is obligated currently to defend. Thus, the collateral order doctrine, which is quite narrow, is not applicable.

■ Finally, though not mentioned by the parties, we have considered whether the orders of October 14, 1988, and January 5, 1989, may together be considered an interlocutory order granting an injunction. 28 U.S.C. § 1292(a)(1). In *Cohen v. Board of Trustees*, 867 F.2d 1455, 1463–66 (3d Cir.1989), we indicated that for purposes of 28 U.S.C. § 1292(a)(1) for an order to be an injunction it must, in addition to adjudicating some of the relief sought in the complaint, be enforceable pendente lite by contempt. Furthermore, under Fed.R.Civ.P. 65(d) the order should be specific as to its

---

**5.** We recognize that a conclusion as to whether a disputed question has been completely determined is dependent to some degree on how the question is stated. Thus, if the question is whether AMICO must initially defend the case then arguably it has been conclusively determined. Nevertheless, even if that is the question the second and third collateral order conditions will not have been met.

**6.** In its letter of June 14, 1989, at 2, AMICO itself explained why the defense and indemnity issues were not separate: "In the district court, AMICO contended that its policies do not obligate it to defend or to indemnify Levolor for the reasons, among others, that the policies specifically exclude coverage for pollution claims and that the CERCLA claim does not seek relief from Levolor in the form of 'damages.'"

terms. Here the order of October 14, 1988, did not direct AMICO to do anything. It simply recited that "the motion for partial summary judgment brought by Levolor Lorentzen, Inc. with respect to the issue of the obligation [of AMICO] to provide a defense is granted." This form of order is consistent with the pleadings as Levolor's counterclaim was for a declaratory judgment and damages. The order of January 5, 1989, recited that AMICO's motion for reconsideration, alteration and amendment "be and hereby is denied."[7] Thus, the district court, while effectively defining AMICO's duty, did not order it to undertake the defense. Therefore the orders from which the appeal was taken cannot be enforced pendente lite by contempt and do not constitute an injunction. Accordingly, we do not have jurisdiction under 28 U.S.C. § 1292(a)(1).[8]

The appeal will be dismissed.

---

7. The order of March 22, 1989, insofar as germane to this issue, recited only that AMICO's motion to certify the October 14, 1988, and January 5, 1989, orders as final was granted and that final judgment was entered on the orders.

8. It should not be inferred from our discussion of an injunction and 28 U.S.C. § 1292(a)(1) that we are suggesting that a district court should enter an otherwise unwarranted interlocutory injunction so that a court of appeals might have jurisdiction over an interlocutory appeal.