**PUBLIC INTEREST RESEARCH GROUP OF NEW JERSEY, INC., et al., Plaintiffs,**

v.

**HERCULES, INC., Defendant.**

**Civ. A. No. 89–2291(JBS).**

United States District Court, D. New Jersey.

Sept. 8, 1993.

---

Carolyn Smith Pravlik, Elisabeth J. Lyons, Terris, Pravlik & Wagner, Washington, DC, and Edward Lloyd, Newark, NJ, for plaintiffs.

Joel Schneider, E. Lynne Hirsch, Manta and Welge, Cherry Hill, NJ, for defendant.

## OPINION

SIMANDLE, District Judge:

On March 31, 1993, this court filed an Opinion and accompanying Order granting in part and denying in part the parties' motions for summary judgment.[1] That Opinion held that under § 505(b)(1) of the Clean Water Act, 33 U.S.C. § 1365(b)(1),[2] in which Con-

---

1. The Opinion and Order also addressed other motions which are not directly pertinent to the motions being addressed herein.

2. Section 505(b)(1) of the Clean Water Act, 33 U.S.C. § 1365(b)(1) (1988), provides as follows:

No action may be commenced—
  (1) under subsection (a)(1) of this section—
  (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of *the standard, limitation, or order,* or
  (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the stan-

dard, limitation or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.
  (2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the administrator, except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 1316 and 1317(a) of this title. *Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.* [Emphasis added.]
The procedures prescribed by the Administrator of the EPA for pre-complaint notice of intent-to-sue in such a Clean Water Act citizen suit are set forth at 40 C.F.R. § 135.1, *et seq.* The specif-

gress required that plaintiffs give sixty days notice of the alleged violation to the alleged violator and to Federal and state authorities before commencing an action, the plaintiffs may sue only upon those violations which are included in their notice letter and upon violations occurring after the complaint was filed that are alleged to be a continuation of the same type of violations as contained in the notice letter and complaint, but not upon pre-complaint non-noticed violations nor upon post-complaint violations that are not a continuation of those noticed. As a result, the court permitted suit to go forward upon the discharge violations contained in the notice letter and all alleged post-complaint discharge violations, and it dismissed all other types of alleged violations (concerning monitoring, reporting and recordkeeping) as well as alleged pre-complaint discharge violations not contained in the sixty-day notice letter.

Plaintiffs Public Interest Research Group of New Jersey, Inc. ("NJPIRG") and Friends of the Earth ("FOE") have moved for a stay and for entry of a final judgment under Fed.R.Civ.P. 54(b) or, alternatively, for certification for purposes of an interlocutory appeal under 28 U.S.C. § 1292(b), with respect to this court's interpretation of the pre-complaint statutory notice requirement under the Clean Water Act at 33 U.S.C. § 1365. Additionally, in the event plaintiffs' certification motion is granted, defendant Hercules, Inc., seeks § 1292(b) certification of the question whether the court erred in not dismissing certain alleged post-complaint violations for failure to comply with § 1365. For the reasons discussed below, the court will grant the plaintiffs' and defendant's motions for § 1292(b) certification and will stay this litigation, which is otherwise trial-ready upon the remaining claims, pending the resolution of plaintiff's application for appeal in the United States Court of Appeals for the Third Circuit.

### I. Procedural History [3]

Plaintiffs filed this citizen suit under § 505(a) of the Federal Water Pollution Control Act (the "Clean Water Act" or the "Act"), 33 U.S.C. § 1365(a), on May 24, 1989, alleging that the defendant committed numerous violations of the National Pollutant Discharge Elimination System ("NPDES") permit issued to it pursuant to Title IV of the Act, 33 U.S.C. §§ 1341–1345. The plaintiffs gave notice of this litigation on March 21, 1989 by serving notice of their intent to sue the defendant for violations of its NPDES permit. This "sixty-day" notice letter is a statutory prerequisite to the filing of the plaintiff's complaint, under section 505(a) of the Clean Water Act, *supra. See PIRG v. Hercules, Inc.,* 830 F.Supp. 1525, 1528 (D.N.J. March 31, 1993); 33 U.S.C. § 1365(b)(1).

The plaintiffs' sixty-day notice letter listed only 68 specific violations of the discharge limits of defendant's permit. These discharge violations are the type of Clean Water Act violation which occurs when the discharge parameters of a company's permit under the NPDES is exceeded, and they typically involve a measured discharge of effluent into the surrounding waters that exceeds the permitted amount or concentration of pollutant. The permit letter did not refer to any violations of the permit's monitoring, reporting, or recordkeeping requirements.

The complaint filed on May 24, 1989 listed 87 alleged discharge violations, 31 of which were not among those mentioned in the plaintiffs' March 21, 1989 sixty-day notice letter. *See Hercules,* 830 F.Supp. at 1528–29. Like the notice letter, the complaint was devoid of any specific allegations of monitoring, reporting, or recordkeeping violations.

ic content requirements of the notice of intent-to-sue are contained in 40 C.F.R. § 135.3(a) (1992), which is unchanged since 1973 and provides: *Violation of standard limitation, or order.* Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include *sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated,* the *activity alleged* to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, *the date or dates of such violation,* and the full name, address, and telephone number of the person giving notice. [Emphasis added].

**3.** For a more complete background summary, *see* the court's Opinion filed March 31, 1993.

In contrast to discharge violations, the Clean Water Act's provisions for monitoring, reporting and recordkeeping do not address the levels of the plant's effluent discharges, but instead are concerned with the techniques and procedures for monitoring, reporting and recordkeeping. The occurrence of effluent discharge violations does not imply that any monitoring reporting or recordkeeping violation has occurred because these are conceptually separate concerns.

As of March 31, 1993, when this court entered its Opinion and Order, the plaintiffs had filed only one sixty-day notice letter and only one complaint, concerning only effluent discharge violations. Nevertheless, during the course of litigation the plaintiffs significantly added to the number—and type—of alleged violations for which they sought to hold defendant liable. These additions came in the form of several unilateral enlargements during the course of briefing the parties' cross-motions for summary judgment occurring prior to the reassignment of these motions to the undersigned. After all of the additions, changes, and even withdrawals of alleged violations, the total number of violations the plaintiffs were alleging had grown to 114 discharge violations, 328 monitoring violations, 58 reporting violations, and 228 recordkeeping violations. *See PIRG v. Hercules*, 830 F.Supp. at 1552. Thus, without any additional sixty-day notice or amended complaint being filed, the number of alleged violations increased almost nine-fold from the 87 discharge violations listed in the May 24, 1989 complaint (and 67 discharge violations in the plaintiffs' March 21, 1989 notice letter) to a total of over 700 violations of all types. The plaintiffs' allegations also increased in scope, with the plaintiffs specifically alleging monitoring, reporting, and recordkeeping violations in addition to discharge violations.

Both parties filed various motions, including cross-motions for summary judgment. Of present concern was the motion of defendant Hercules, Inc., which sought summary judgment, pursuant to the statutory notice requirement of 33 U.S.C. § 1365(b)(1) and applicable regulations, dismissing all violations other than those for which it received notice in the 60–day notice letter. In its March 31, 1993 Opinion and Order, the court granted summary judgment for the defendant as to all violations, of all types, which occurred prior to the filing of the complaint but which were not listed in the plaintiffs' statutorily-required notice-of-intent-to-sue letter, dated March 21, 1989.[4] The court denied defendant's motion in part, by permitting plaintiffs' assertion of discharge violations that occurred *after* the complaint was filed but were of a continuing nature with the discharge violations referenced in the notice letter and complaint; a total of 66 post-complaint discharge violations were thus not dismissed. The court granted summary judgment for the plaintiffs as to 60 discharge violations.[5]

4. The court also granted summary judgment to the defendants on four discharge violations (nos. 42, 44–46 in plaintiffs' September 14, 1992 letter to the undersigned) which were included in the plaintiffs' notice (as well as on two others, nos. 43 and 47, which were not included in the notice and which would have been dismissed in any event for that reason), holding that they were subject to a statutory "upset" defense. *See Hercules*, 830 F.Supp. 1540–41. The court refused to grant summary judgment to either party on six alleged discharge violations (nos. 50–51, 53, 56–58) which the defendant also maintained were subject to an upset defense. *Id.* at 1541. The parties have since entered into a Stipulation and Order, dated July 28, 1993, which permanently disposes of these ten discharge violations.

Pursuant to the Stipulation and Order, the defendant has consented to the entry of summary judgment on liability for discharge violation nos. 50–51, 53, 56–58 in plaintiffs' September 14, 1992 letter to the undersigned. *See* Stipulation and Order, dated July 28, 1993, at 2, ¶ 1. This stipulation obviates the need to address the penalty issue as to these alleged violations at trial. The plaintiffs have agreed to the dismissal with prejudice of discharge violation nos. 42–47 in plaintiffs' September 14, 1992 letter to the undersigned. *Id.* at 2, ¶ 2. In addition, the parties have agreed to the entry of summary judgment for Hercules as to plaintiffs' claims for injunctive relief without prejudice to another application based upon future violations. *Id.* at 2, ¶ 3.

5. All in all, the court granted summary judgment (with respect to liability only) to the plaintiffs on 60 of the 114 alleged discharge violations; denied summary judgment to both parties on 6 discharge violations; and granted summary judgment to the defendant on all of the remaining alleged discharge violations and on all of the alleged monitoring, reporting, and recordkeeping violations. (This summary of the court's March 31, 1993 disposition includes those discharge

On April 7, 1993, the plaintiffs sent a notice letter notifying the defendant, the Environmental Protection Agency, and the State of New Jersey that they intended to file a complaint against the defendant for 323 monitoring violations, 58 reporting violations, and 225 recordkeeping violations of its NPDES permit. Plaintiffs have not, however, reasserted the discharge violations that had been previously dismissed for lack of notice. Those violations are substantially the same as those violations which were not included in plaintiffs' March 21, 1989 notice letter and for which the court previously awarded the defendant summary judgment.[6] On June 11, 1993, after the expiration of the statutorily-required sixty-day waiting period, the plaintiffs filed a new complaint which included the violations listed in the April 7, 1993 notice letter, encaptioned *Public Interest Research Group of New Jersey, Inc., et al. v. Hercules, Inc.,* Civil No. 93–2381(JBS).

II. *Motion for Rule 54(b) Order of Final Judgment or, alternatively, for 28 U.S.C. § 1292(b) Certification*

Plaintiffs seek the entry of a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure as to the plaintiffs' claims for the alleged pre-complaint discharge, monitoring, reporting, and recordkeeping violations which were not included in the plaintiffs' March 21, 1989 notice letter and upon which this court granted the defendant summary judgment. In the alternative, the plaintiffs seek certification for purposes of an interlocutory appeal under 28 U.S.C. § 1292(b) of the issue of whether the defendant is liable for these dismissed violations even though they were not listed in the plaintiffs' March 21, 1989 notice letter. For the reasons stated below, the court will deny plaintiffs' Rule 54(b) request and grant their § 1292(b) certification request, together with defendant's conditional cross-request for § 1292(b) certification.

A. Rule 54(b)

■ Rule 54(b) of the Federal Rules of Civil Procedure provides in pertinent part that:

> When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed.R.Civ.P. 54(b).

In reviewing a motion under Rule 54(b), the court must first determine whether it is dealing with a "final judgment." *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 17, 100 S.Ct. 1460, 1471, 64 L.Ed.2d 1 (1980). To be recognized as a "final" judgment for purposes of Rule 54(b), the judgment must be final "in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)). The Third Circuit has stated that "an order subject to revision by the district court in subsequent proceedings before final judgment on all issues is not an ultimate disposition of an individual claim within Rule 54(b)." *Sussex Drug Products v. Kanasco, Ltd.,* 920 F.2d 1150, 1154 (3d Cir.1990) (citing *American Motorists Insurance Co. v. Lorentzen, Inc.,* 879 F.2d 1165, 1170–71 (3d Cir.1989)).

The plaintiffs have already filed a second complaint as to the alleged monitoring, reporting, and recordkeeping violations previously dismissed by this court for lack of notice. In its March 31, 1993 Opinion, this court explicitly declined to decide whether this new complaint would be barred under the Supreme Court's decision in *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). *See Hercules,* 830 F.Supp. at 1534 n. 11. We likewise decline to decide

violations addressed by the parties' Stipulation and Order previously disclosed at note 4, *supra*.)

6. The plaintiffs have decided to withdraw 5 monitoring and 3 recordkeeping violations which they previously alleged, as well as the previously dismissed discharge violation.

this question here.[7] But as the defendant points out in its brief, if the court holds that the plaintiffs' second complaint is not barred under *Gwaltney* or on any other ground, then the question of Hercules' liability for the violations in question would proceed to trial, or at least be the subject of another summary judgment motion by the plaintiffs. Thus, the court's March 31, 1993 decision granting summary judgment to the defendant does not constitute the "ultimate disposition" of these alleged violations.[8] The court therefore will deny the plaintiffs' motion for entry of judgment under Rule 54(b).[9]

## B. 28 U.S.C. § 1292(b)

■ The Interlocutory Appeals Act, 28 U.S.C. § 1292, provides a means of appealing from interlocutory orders that are otherwise non-appealable. Section 1292(b) provides that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that

an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals ... may thereupon, in its discretion, permit an appeal to be taken from such order, ... *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b) (emphasis in original). By its terms, the statute sets forth three criteria which must be satisfied before the court can certify a question for interlocutory appeal. The court may exercise its discretion to grant a § 1292(b) certificate only if the court's Order:

> (1) involve[s] a "controlling question of law," (2) offer[s] "substantial ground for difference of opinion" as to its correctness, and (3) if appealed immediately "materially advance the ultimate termination of the litigation."

*Katz v. Carte Blanche Corporation,* 496 F.2d 747, 754 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

**7.** The defendant asserts that the new complaint is barred by *Gwaltney* and, perhaps, for other, unspecified reasons as well. As there is currently before the court no motion to dismiss or for summary judgment on *Gwaltney* or other grounds, we have no reason to decide this issue at the present time. We decline to follow the plaintiffs' suggestion, made in anticipation of our ruling here, that the court delay deciding the plaintiffs' motion until the court has ruled on the parties' motions relating to this new complaint.

**8.** It is true, as the plaintiffs point out, that regardless of how it rules on the defendant's motions relating to the new lawsuit, the court will not revise or in any way revisit its earlier decision that plaintiffs cannot in this case pursue precomplaint violations not included in the notice letter. But the court's prior Order did not definitively decide—indeed, it did not even reach the question—whether the defendant is in fact liable for these alleged violations. The court's previous Opinion and Order "merely" found that the defendant could not be required to defend these allegations on the basis of the plaintiffs' May 24, 1989 complaint and their related but inadequate March 21, 1989 notice letter. The court clearly did not forever foreclose the possibility that the defendant could be held liable for these alleged violations and did not reach the merits of such violations.

**9.** Because we conclude that our March 31, 1993 Order does not constitute a final judgment for purposes of Rule 54(b), we do not address the other prerequisite to a Rule 54(b) judgment, *i.e.,* that the court's order constitute a final decision as to one of several claims, rather than a decision as to only part of a single claim. *See Sussex Drug Products v. Kanasco, Ltd.,* 920 F.2d 1150, 1154 (3d Cir.1990) (citations omitted). The plaintiffs argue that their complaint involves multiple claims, with each different alleged violation constituting a separate, individual claim for purposes of Rule 54(b). The defendant, on the other hand, contends that the series of violations alleged by the plaintiffs represents a single legal claim. The Third Circuit has recognized that "there is no definitive test to determine whether more than one claim is before the court." *Id.* (citing *Allegheny County Sanitary Auth. v. EPA,* 732 F.2d 1167, 1172 (3d Cir.1984)). This court notes, however, that plaintiffs' current assertion that each of the dismissed violations represents an individual, separate claim logically supports the court's underlying decision on the issue of notice. If each specific violation constitutes, as plaintiffs now claim it does, a separate legal right, then it would seem even more logical and reasonable to require that plaintiffs provide notice of each separate violation before they are permitted to file a complaint and seek penalties therefor.

### 1. *"Controlling Question of Law"*

The court's order clearly involves a controlling question of law as that term is defined for purposes of § 1292(b). As the Third Circuit has explained:

A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal. If the statute were interpreted to exclude any such order that interpretation would be inconsistent with the clear intention of the sponsors to avoid a wasted trial. Nor need the order be determinative of any plaintiff's claim on the merits, since a dismissal for want of jurisdiction is within § 1292(b). Nor need a reversal of the order terminate the litigation, since with impleader and transfer of venue orders, two of the sponsors' examples, the lawsuit could continue regardless of the interlocutory determination although an erroneous decision might cause a reversal on appeal from a final order. What remains is the question whether in order for a question to be "controlling" must it be one which if decided erroneously would lead to a reversal on appeal? Certainly Judge Maris, testifying in favor of the bill on behalf of the Judicial Conference, did not think so. His testimony suggests that "controlling" means serious to the conduct of the litigation, either practically or legally. And on the practical level, saving of time of the district court and of expense to the litigants was deemed by the sponsors to be a highly relevant factor.

*Katz,* 496 F.2d at 755 (internal citations and footnote omitted).

The issue of whether under 33 U.S.C. § 1365(b)(1) the plaintiffs can sue only upon those violations which were included in their notice letter, unless the violations occurred after the filing of the complaint and are continuing violations of the same type as those contained in the notice letter, is a controlling question under both the stricter standard—that it be a question that if decided erroneously would lead to a reversal on appeal—as well as the looser standard—that it is serious to the conduct of the litigation.

If, on appeal from this court's final judgment, the Third Circuit determines that this court erred in deciding the notice issue, that judgment would certainly be reversed and the case remanded to this court to determine the defendant's liability *vel non* for those violations dismissed by this court for lack of notice and the penalty, if any, to be assessed for those violations.

The question in dispute is clearly serious to this litigation in both the practical and legal sense. As a practical matter, if this issue is not immediately appealed, the parties and the court may, if plaintiffs are successful in their appeal after a final judgment, have to conduct two lengthy, and almost identical, trials as to the penalty to be imposed. The plaintiffs alleged a total of 728 violations. As a result of the court's order granting summary judgment for the defendant on the notice issue, a trial held now would determine the penalty as to only 60 of these violations. The trial, which plaintiffs estimate will last approximately two to three weeks, will require the court to hear evidence regarding each of the several factors which the Clean Water Act requires the court to consider in determining what penalty, if any, to assess. 33 U.S.C. § 1319(d).

If the court proceeds immediately to trial and does not certify the notice issue for interlocutory appeal, the plaintiffs will assuredly appeal the court's ruling dismissing more than 600 alleged violations after the trial has ended and a final judgment is entered. In the event that the plaintiffs are successful on their post-trial appeal, this court will be required to have a new trial as to the liability issues and the appropriate penalty for some or all the additional 600–plus violations in question. The court would then have to conduct a second trial, hearing similar issues regarding defendant's permit compliance as to alleged violations not presented in the first trial. An immediate appeal of the notice issue would therefore save the time and resources of this court and reduce the parties' litigation expenses.[10]

---

10. The defendant, in opposing certification, complains that if the Third Circuit upholds this court's decision on the notice issue on interlocutory appeal, Hercules will have been forced to

As a legal matter, the notice issue is of major significance to this, and other, litigation. With respect to this litigation, the ultimate resolution of this issue will determine whether the court must decide the appropriate penalty for "only" 60 discharge violations, or for potentially [11] as many as 700 discharge, monitoring, reporting, and recordkeeping violations of the defendant's NPDES permit.

Plaintiffs also point out that this court's March 31, 1993 Order, and the ultimate resolution of the notice issues decided therein, will also significantly impact the at least seven other Clean Water Act cases brought by citizen-plaintiffs which are currently pending in this court, not to mention all other such cases pending in other courts. The outcome of this issue will affect not only the manner in which these pending suits are litigated but future compliance with the statutory notice provision of the Clean Water Act.

### 2. "Substantial Difference of Opinion"

This court granted summary judgment for the defendant as to those pre-complaint violations not included in the plaintiffs' notice letter based in large part upon the Supreme Court's decision in *Hallstrom v. Tillamook County*, 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). As far as this court is aware, it is the only one to have held that a plaintiff is statutorily barred from seeking penalties under the Clean Water Act for violations which it had not previously included in its sixty-day notice letter or for post-complaint continuations thereof. In fact, in two other post-*Hallstrom* cases which addressed this issue, the courts permitted the plaintiffs to sue upon violations not included in their notice letter, albeit without analysis of the proposition that the Act requires that the court's jurisdiction over non-noticed violations depends upon their character as continuing or intermittent violations. *See PIRG v. Witco Chemical Corp.*, C.A. No. 89–3146, 90–968, 1990 WL 512262 (D.N.J. June 28, 1990) (Sarokin, J.);[12] *Atlantic States Legal Foundation v. Reynolds Metals Co.*, 31 ERC 1156, 1157–58 (N.D.N.Y.1990). Several other courts have held defendants liable subsequent to *Hallstrom* for violations not included in a citizen-plaintiff's sixty-day notice letter, without discussion of the issue. *See* cases cited at Plaintiffs' Brief In Support of Motion for 28 U.S.C. § 1292(b) Certification at 20. In addition, several pre-*Hallstrom* cases either explicitly reached a different conclusion than that reached by this court, or did so implicitly by letting the cases go forward notwithstanding the absence of notice.

This court is apparently the first one to squarely recognize that under the Clean Water Act the court lacks jurisdiction over violations not included in the plaintiff's notice letter, other than post-complaint continuing violations of the same type.[13] While this

bear the financial burden of a "premature and needless" appeal. This concern ignores the virtual certainty that Hercules will be forced to address this issue on appeal later if not sooner. The only foreseeable circumstance under which this court's March 31, 1993 decision on the notice issue will not be heard by the Third Circuit is if this court were to permit, over the defendant's objection, the plaintiffs' new lawsuit (which includes most of the alleged violations previously dismissed) to go forward. The defendant itself, however, argues that this court must dismiss the new complaint for various reasons. We do not decide that question today. But if the defendant is to accept its own position regarding the new complaint, it must concede that the notice issue will reach the Third Circuit once a trial is had and a final judgment is entered on the 60 violations now remaining.

11. Of the violations dismissed for lack of statutory notice, defendant had raised other objections in seeking summary judgment as to a minority of them which would remain to be determined before trial.

12. In *Witco*, the plaintiff filed a second complaint which was substantially similar to the first one. The defendant claimed that the plaintiff had failed to comply with the notice provisions of the Clean Water Act by failing to serve a second notice letter and by failing to give defendant notice of the reporting and monitoring violations. *Witco*, slip op. at 3. The court concluded that the scope of the plaintiff's first notice letter was "broad enough to encompass the violations" alleged in the second complaint. *Id.* at 4. The court stated that the first notice was sufficient to satisfy the statutory-notice requirements. *Id.* This court cited *Witco* in its March 31, 1993 Opinion, but found it inapposite to the case at bar. *See* 830 F.Supp. at 1531, 1532.

13. In a related vein, the Third Circuit has also recently recognized that a plaintiff's notice of intent to file suit entails a parameter-by-parameter listing. In *NRDC v. Texaco Refining and Marketing, Inc.*, 2 F.3d 493 (3d Cir. 1993), the court was faced with adjudicating "the proper standard for determining the extent of a court's

court obviously believes in the correctness of its decision, which is mandated by the clear language and purpose of 33 U.S.C. § 1365(b), and accompanying regulations at 40 C.F.R. § 135.3, there does appear to be a substantial ground for difference of opinion as to this aspect of its March 31, 1993 Opinion and Order. This court thus find that this case satisfies the second of the three prerequisites to interlocutory appeal.

### 3. *"Materially Advance the Ultimate Termination of the Litigation"*

The third condition which must be satisfied is that an interlocutory appeal will materially advance the termination of the litigation. Professors Wright and Miller explain that:

> The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law.

16 C. Wright, A. Miller, E. Cooper, E. Gressman *Federal Practice & Procedure* § 3930, at 163 (1977).

As a practical matter, resolution of this interlocutory appeal will determine whether the trial of this case will involve (a) civil penalties for 60 discharge violations, or (b) such civil penalties, plus all remaining liability issues, concerning as many as 700 claimed violations of all types. Additionally, the viability of the newly-filed complaint in Civil No. 93–2381, *supra,* may be doubtful, and would be the subject of a motion to dismiss for failure to state a claim for continuing violation of the Clean Water Act, according to defendant, because the most recent violation alleged therein occurred in June 1991, thus running afoul of the Supreme Court's holding that the Clean Water Act "does not permit citizen suits for wholly past violations," *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60–61, 108 S.Ct. 376, 382–83, 98 L.Ed.2d 306 (1987). If the present determination is upheld on appeal, this *Gwaltney* issue would be addressed in the new suit; if the determination is reversed, the dismissed claims would be restored to the present suit for further adjudication.

For the reasons outlined earlier, this court believes that immediate appeal of the notice issue will save time and expense, and will materially advance the ultimate resolution of this litigation.

In summary, this court finds that each of the three criteria set forth in 28 U.S.C.

subject matter jurisdiction over cases in which a plaintiff alleges a series of permit violations involving multiple parameters." *Id.,* 2 F.3d at 498. The Third Circuit rejected the notion of a "permit-based" standard (under which a plaintiff's good faith allegation that violations of the permit as a whole or of any particular parameter within the permit occur on a continuous or intermittent basis suffices to permit exercise of jurisdiction over all alleged past, present and potential future violates of all types covered by the permit). *Id.* The court instead found that a "by-parameter" approach to jurisdiction is required, which requires "an independent determination of jurisdiction with respect to violations of each parameter." *Id.,* 2 F.3d at 499 n. 3. Significantly for present purposes, the Third Circuit noted, *id.,* 2 F.3d at 501:

> Moreover, we do not think the added analysis required under a by-parameter approach will greatly complicate citizen suits. To begin with a district court need not engage in any factfinding whatsoever in order to determine the scope of its subject matter jurisdiction in citizen suits. As the Court in *Gwaltney I* made exceedingly clear, good faith allegations "suffice for jurisdictional purposes." 484 U.S. at

65, 108 S.Ct. at 385. Nor is it particularly burdensome for plaintiffs to make jurisdictional allegations on a by-parameter basis, since federal regulations already require plaintiffs to provide a notice of intent to file suit containing "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated. The activity alleged to constitute a violation ... [and] the date or dates of such violation." 40 C.F.R. § 135.3: *see* 33 U.S.C. § 1365(c)(3). In addition, citizen-plaintiffs should have ready access to the relevant information which is contained in publicly available DMRs. *See* 40 C.F.R. §§ 2.101; 122.7; 122.41(j), (i); 122:44(1); *see also* 33 U.S.C. § 1314(1). Although the case dealt with the sufficiency and proof of plaintiff's jurisdictional allegations, the implications for the notice requirement are obvious and they accord with my findings upon the issue certified herein. Namely, if jurisdiction must be analyzed on a parameter-by-parameter basis, the statutory requirement of notice of intent to sue, requiring identification of the specific parameters alleged to have been violated, suffices to support jurisdiction upon those parametric violations and continuations post-complaint, and not upon others.

§ 1292(b) is satisfied here and that this court will certify the question of whether this court correctly determined the Clean Water Act at 33 U.S.C. § 1365(b) and accompanying regulations require dismissal of alleged violations occurring prior to the filing of the complaint but not included in the notice of intent-to-sue letter, as well as the dismissal of alleged violations occurring after the filing of the complaint which are of a different type (as among effluent discharge violations and monitoring, reporting or recordkeeping violations) and therefore not continuous of those violations for which notice was given.

### 4. Defendant's Conditional Cross–Application for § 1292(b) Certification

■ In addition, the court will also certify the closely related question of whether it was correct in permitting the plaintiffs to proceed on the *post*-complaint discharge violations of the same type as those listed in the March 1989 notice letter. The defendant has requested that if we decide to certify the first question, we certify this second one as well.[14]

In its March 31, 1993 Opinion and Order, the court held that although section 1365(b)(1) precluded plaintiffs from proceeding on the unnoticed, *pre*-complaint violations, the court had jurisdiction and plaintiffs were entitled to summary judgment for those continuing discharge violations which occurred *after* they filed their complaint even though those violations were not included in the sixty-day notice letter. The court believed that just as the statute's plain language and the Supreme Court's *Hallstrom* decision compelled, in our view, dismissal of the pre-complaint, non-noticed violations, *see PIRG v. Hercules*, 830 F.Supp. at 1530–34, the Supreme Court's decision in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), constrained the conclusion that the defendant could nevertheless be held liable for post-complaint discharge violations because such violations were alleged to be a continuation of the same type of violation as those for which statutory notice was given.

As we explained in the court's March 31, 1993 Opinion, violations occurring after the filing of the sixty-day notice letter and the complaint "were specifically contemplated—indeed required—by the Supreme Court as a prerequisite to a district court's jurisdiction over a citizen suit under the Clean Water Act." *Hercules*, 830 F.Supp. at 1534. In *Gwaltney*, the Court held that the Clean Water Act does not permit citizen suits for "wholly past violations." *Id.*, 484 U.S. at 60–61, 108 S.Ct. at 382–83. In accordance with this statutory bar, the Court further held that citizen suits for civil penalties may be maintained only where the defendant has violated its permit after the complaint was filed or where the plaintiff can at least make a good-faith allegation that the defendant has continued to violate its permit after the filing of the complaint. *Id.* at 64, 108 S.Ct. at 385. *See also PIRG v. Star Enterprise*, 771 F.Supp. 655, 665 (D.N.J.1991) (citations omitted). Thus, regardless of how many violations are alleged in the citizen-plaintiff's sixty-day notice letter, a citizen-suit may not go forward unless the defendant is alleged to be in non-compliance on the date the complaint is filed. *See Id.; Atlantic States Legal Foundation v. Tyson Foods*, 897 F.2d 1128, 1134 (11th Cir.1990).

This court found that the Act expressly anticipates that post-complaint violations will be included among the violations alleged by the plaintiff, in order to meet the continuing violation requirement of *Gwaltney*. Yet it is obvious that violations occurring after the complaint is filed cannot have been literally included in the pre-complaint notice letter, and a sensible reading of § 1365(b) cannot require a citizen-suit plaintiff to give specific notice of violations that have not yet occurred. One cannot notice what has not yet occurred. But neither the Supreme Court's decisions nor the statute requires that the citizen-plaintiff file a second notice-letter listing the post-complaint violations, and then wait the statutory minimum sixty days before filing a second, or amended, complaint as to the new, post-complaint violations, where those violations are of the type already noticed before suit and continuing thereafter.

**14.** The plaintiffs do not object to the certification of this second question.

This gloss upon the statute, creating for continuing violations of the same type an exception to the mandatory notice requirement, does not reach all post-complaint violations. While we granted summary judgment to the plaintiff on the post-complaint discharge violations, we dismissed all of the alleged post-complaint monitoring, reporting, and recordkeeping violations. Although we found that the continuing nature of post-complaint violations eliminated the need for notice as to the post-complaint discharge violations, the same could not be said with respect to the other types of violations subsequently alleged by the plaintiffs.

Because the sixty-day letter listed 68 discharge violations, the defendant was on notice that plaintiff sought to hold it liable for that type of violation. Neither the notice letter nor, for that matter, the complaint, listed any reporting, monitoring, or recordkeeping violations. Thus, neither the defendant nor the state or federal environmental agencies were aware that defendant would be subject to suit for these very different types of violations. Even though the specific post-complaint discharge violations were not noticed, the defendant did have some notice that it was being sued for discharge violations. Plaintiffs gave absolutely no notice, however, that they were in addition seeking penalties for three other categories of violations that are not discharge violations. Although in our view, the notice letter is broad enough to encompass post-complaint violations only of the same type, neither the Act nor the Supreme Court contemplated the broad-based exception to the Act's mandatory notice provision which would be occasioned by permitting the plaintiffs to sue upon the alleged post-complaint violations of all other types without having provided at least one sixty-day notice letter listing monitoring, reporting and recordkeeping violations.

For these reasons, the interplay between the two aspects of interpretation of § 1365(b)(1) is obvious, and this court will certify, at defendant's request, the question of whether § 1365(b) and accompanying regulations permit this court to retain jurisdiction over alleged violations occurring after the filing of the complaint, where the violations are alleged to be continuing violations of the same type as alleged in the pre-complaint notice letter.

## III. *Motion for Stay*

The plaintiffs have also moved for a stay of this litigation. In light of our decision to certify the issue of notice to the Third Circuit, the court will stay the proceedings in this case, as well as the proceedings related to the plaintiffs' new complaint, pending the resolution of this issue in the Third Circuit on certification.

## IV. *Conclusion*

For the foregoing reasons, the court will deny the plaintiffs' motion for final judgment under Fed.R.Civ.P. 54(b), and grant its motion for certification under 28 U.S.C. § 1292(b). The court will certify the following question which combines the above-stated issues into a single controlling question of law:

Whether this court correctly decided, pursuant to section 505(b)(1) of the Clean Water Act, as amended, 33 U.S.C. § 1365(b)(1) and the accompanying regulations at 40 C.F.R. § 135.3, that where plaintiffs have given notice of intent to sue for various discharge violations but no other type of violation (*i.e.*, monitoring, reporting or recordkeeping) this court's subject matter jurisdiction includes the noticed violations and any post-complaint continuing violations of the same type as those for which notice was given, but not unnoticed pre-complaint violations, nor post-complaint violations of a different type from those for which notice was given.

The court will also stay this action, as well as the one relating to the plaintiffs' related new lawsuit in Civil Action No. 92–2381, *supra*, pending further proceedings upon these certified questions.

An appropriate Order will be entered.

## ORDER CERTIFYING QUESTION FOR INTERLOCUTORY APPEAL

This matter having come before the court upon plaintiffs' motion for a stay and for

entry of a final judgment under Rule 54(b), Fed.R.Civ.P. or, alternatively, for certification for purposes of interlocutory appeal under 28 U.S.C. § 1292(b), with respect to that aspect of the Opinion of March 31, 1993 interpreting the sufficiency of plaintiffs' pre-complaint notice under section 505(b)(1) of the Clean Water Act, as amended, 33 U.S.C. § 1365(b)(1); and

Also upon defendant's conditional cross-motion for certification upon a second related issue in the event certification is granted upon plaintiffs' motion; and

Having considered the submissions and oral arguments of counsel; and for good cause shown for reasons stated in the Opinion of today's date, and pursuant to LAR 5.1 (3d Cir.1993);

IT IS this 8th day of September, 1993 hereby

ORDERED that plaintiffs' motion for Rule 54(b) certification be, and it hereby is, DENIED; and

IT IS FURTHER ORDERED that plaintiffs' motion for certification of interlocutory appeal under 28 U.S.C. § 1292(b), and the defendant's conditional cross-application for § 1292(b) certification, be and they hereby are GRANTED; and

IT IS FURTHER ORDERED that the following controlling question of law be, and it hereby is, CERTIFIED to the United States Court of Appeals for the Third Circuit:

> Whether this court correctly decided, pursuant to section 505(b)(1) of the Clean Water Act, as amended, 33 U.S.C. § 1365(b)(1) and the accompanying regulations at 40 C.F.R. § 135.3, that where plaintiffs have given notice of intent to sue for various discharge violations but no other type of violation (*i.e.*, monitoring, reporting or recordkeeping) this court's subject matter jurisdiction includes the noticed violations and any post-complaint continuing violations of the same type as those for which notice was given, but not unnoticed pre-complaint violations, nor post-complaint violations of a different type from those for which notice was given.

IT IS FURTHER ORDERED that this case, as well as the related case in Civil Action No. 93–2381(JBS), be and hereby are STAYED until further Order of this court.