DAVID H. LONG & others[1] vs. HENRY L. WICKETT, SR.,
& others.[2]

No. 98-P-1424.

Suffolk. April 10, 2000. - November 2, 2000.

Present: PERRETTA, LAURENCE, & DUFFLY, JJ.

*Rules of Civil Procedure. Practice, Civil,* Judgment, Entry of judgment.
*Adverse Possession and Prescription. Real Property,* Adverse possession.

Discussion of the circumstances under which entry of a separate and final
judgment ("certification") under Mass.R.Civ.P. 54(b) is properly directed,
and the standard of review of such a certification. [385-390]

In an action to quiet title, a judge of the Land Court improperly directed entry
of a final judgment under Mass.R.Civ.P. 54(b) with respect to plaintiffs'
claims of adverse possession, where the partial judgment did not adjudicate
a separate claim [390-395, 399-401], where the record did not support a
conclusion that there was no just reason for delay in entering judgment
[395-399, 401-402], and where the judge's findings did not otherwise suf-
ficiently state the reasons and factors prerequisite to the entry of such a
judgment [402-403]: the judgment was vacated and the matter remanded
for further proceedings.

CIVIL ACTIONS commenced in the Land Court Department on
June 30, 1994, and October 13, 1994, respectively.

[1] Stephanie I. Long, Richard W. Zajac, Lisa M. Zajac, Ali R. Bigdeliazari,
Elaine R. Bigdeliazari, Alan D. Lipocky, Joanne M. Lipocky, Daniel F. Mc-
Auliffe, III, Michaelene S. McAuliffe, Elizabeth A. Itse, Framingham Savings
Bank, Rockland Trust Company, Harry M. Hite, Carla M. Hite, William C.
Price, Mary Jane Price, Boston Federal Savings Bank, Mortgage Central
Corporation d/b/a Equitystars, Federal National Mortgage Association, and
Fleet Mortgage Corporation. Also joining in the appeal were Sean Corbett,
Mary Ann Corbett, Kurt R. Schaefer, Ellen E. Schaefer, Milford Federal Sav-
ings & Loan Association, Chase Manhattan Mortgage Company, Thomas R.
Duby, Robin F. Duby, Steven D. Murray, Jr., Leslie A. Murray, Norwest
Mortgage, Inc., Middlesex Savings Bank, Arthur Rice, and Linda Rice.
Subsequent to the initiation of this appeal, all of the appellants save Arthur
and Linda Rice, who own one of the lots in controversy, dismissed their ap-
peals with prejudice.

[2] Henry L. Wickett, Jr., and Theodore A. Jones (collectively the appellees).

After consolidation, the cases were heard by *Karyn F. Scheier*, J., on motions for summary judgment, and entry of a separate and final judgment was ordered by her.

*John G. Dugan* for Arthur Rice & another.

*David L. Arons* for the defendants.

LAURENCE, J. *Background facts.* Upon acquiring apparent title to a ten-acre vacant parcel of land in Medway (locus) in 1987, a developer (not involved in the instant appeal) constructed a sixteen-home subdivision on the locus. Between 1987 and 1990, the developer sold the homes to the original appellants herein. In August, 1993, all of those appellants found in their mailboxes a property owner's worst nightmare: a letter from the appellees' lawyer asserting that the locus had belonged to the appellees and not to the developer, so that the lots and houses thereon were located on land not owned by the present occupants.

A number of those homeowners immediately launched an action against the appellees in the Land Court in two counts, to quiet title and for declaratory relief. They alleged, as to both counts, that the appellees had no title to any portion of the locus, because the plaintiff homeowners enjoyed title by virtue of adverse possession, in that their predecessors in title had entered upon the locus under color of title and had thereafter openly, notoriously, continuously, and adversely possessed it for over twenty years. The appellees responded with wholesale denial of these allegations and a counterclaim seeking to establish their own title, to enjoin the homeowners' continuing trespass, to compel them to remove their houses and improvements, and to recover damages for the appellees' prolonged disseisin. Simultaneously, the appellees filed their own action in the Land Court against the remaining homeowners on the locus who were not involved in the earlier action, seeking the same relief that they demanded in their original counterclaim. The remaining homeowner defendants countered with an adverse possession counterclaim of their own that was identical to the claim asserted by their neighbors in the first action. The two actions were consolidated on the appellees' motion.

*The summary judgment proceedings.* Following depositions of several parties and title experts on both sides of the controversy and armed with an opinion of a title examiner-attorney, the consolidated homeowners moved for summary judgment in both actions. In their written and oral presentations to the judge, they refined their claim by asserting that the

relevant deeds, affidavits, and deposition testimony established that their predecessors in title had actually occupied "a substantial [but undefined] portion" of the locus sufficiently adversely for over twenty years so as to give them title thereto; and that, by virtue of the doctrine of "adverse possession under color of title," they were entitled to add to that actual adverse possession any remaining areas of the locus described in their deeds, so that their title "extends to the entire subdivision."[3] In making these arguments, the homeowners contended that the actual locations of the properties claimed by them and by the appellees and the precise area actually possessed adversely by their predecessors were irrelevant and did not need to be determined.

The appellees filed a cross motion for summary judgment in opposition to the homeowners' motion (though not as to the appellees' counterclaim in the initial action or their complaint). The appellees' contentions — derived from their examination of the various claims of title and deed descriptions contained therein — were that the homeowners' deed descriptions did not even include all of the land in the subdivision, so that the doctrine of color of title could not extend to such areas; and that, in any event, the homeowners' color of title claim arose only from a 1987 deed, so they could not satisfy the twenty-year statutory requirement for adverse possession. The appellees' arguments emphasized the impossibility, on the basis of the homeowners' deeds and purported expert opinion, of accurately ascertaining a description or the boundaries of the area to which they laid claim. Because the homeowners had failed to satisfy their burden of establishing good title to the entirety of their lots within the subdivision, the appellees demanded dismissal of the homeowners' complaint with prejudice.

The judge viewed the parties' summary judgment arguments

---

[3]As stated by the judge (in a formulation not contested by either side), "In order to establish a right to land under color of title, the claimant must: (1) satisfy the elements of adverse possession; and (2) prove that the claim of ownership is based on a muniment [i.e., a document or writing] of title. The land possessed will be adjudged coextensive with the land described by the deed if these requirements are met. *Bellis* v. *Bellis*, 122 Mass. 414, 417 (1877). Thus '[t]he advantage which a person may gain from [the doctrine of color of title] is that the activities relied upon to establish adverse possession reach not only the part of the premises actually occupied, but the entire premises described in a deed to the claimant.' *Norton* v. *West*, [8 Mass. App. Ct. 348, 351 (1979)]."

as addressed to the homeowners' color of title "claim" only, stating that the facts material to that claim were not in dispute — notwithstanding the parties' mutual acknowledgment that the actual location and boundaries of the disputed areas were uncertain and yet to be determined.[4] The judge concluded that the homeowners could not prevail on their claim of adverse possession under color of title because, while no actual boundaries had been established, all of the deeds in the home-owners' chains of title consistently referred to the appellees' lot, wherever it existed on the ground, as the northerly abutter and never incorporated it (whether correctly or erroneously) into that claim of title. In denying the homeowners' motion for sum-mary judgment on their color of title "claim" and granting partial summary judgment to the appellees on that "claim" "as a matter of law," the judge observed that all parties still had to establish the actual locations of and their title to their respective claimed properties at trial "by registry records, surveying materials and evidence of [the fact and extent of] actual adverse possession" by the homeowners' predecessors in title.

*The rule 54(b) certification.* Following the denial of their summary judgment motion, the homeowners filed a motion for entry of a separate judgment on their claim of adverse posses-sion under color of title, pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974),[5] and for a stay of all proceedings in the consolidated cases pending resolution of their intended immedi-

---

[4]Indeed, the judge noted that the appellees' demand for judgment on the entire complaint could not be allowed because they had "not established with certainty the location of [the lot they claimed title to] in relation to the subdivision. There are no instrument surveys before the court . . . . The court cannot establish boundaries based on the various deed descriptions without additional survey evidence relating to both of these parcels and abutting parcels. . . ."

[5]Rule 54(b) provides, in pertinent part: "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." The determination and direction described in the rule is commonly referred to as rule 54(b) "certification," *She Enterprises, Inc.* v. *License Commn. of Worcester,* 10 Mass. App. Ct. 696, 698 n.1 (1980). In the absence of such a determination and direction, no appeal can be taken from a trial court's partial "judgment" on a claim prior to entry of a final judgment disposing of all claims against all parties to the action. *Bragdon* v. *Bradford O. Emerson, Inc.,* 19 Mass. App. Ct. 420, 422-423 (1985). Rule 54(b) "was adopted because of

ate appeal of that issue. The judge allowed the rule 54(b) motion and entered a misnamed "Partial Judgment for Homeowners" on "the claim of adverse possession under color of title only" in the homeowners' original action. She refused to stay the remainder of the case (i.e., the counterclaims in that original action and all of the competing claims in the appellees' action). In her accompanying findings, the judge recognized that there remained "a number of complex issues for trial," including the actual locations on the ground of the lots claimed by the respective parties, the extent of adverse possession by the homeowners' predecessors in title, if any, and the resolution of the appellees' trespass claims and demand for injunctive relief compelling removal of the homeowners' houses and improvements. The judge stated that "[s]ome, but not all of these issues, may become moot depending upon the Appeals Court's disposition" of the color of title appeal that the homeowners sought to press by virtue of her 54(b) certification. The record does not reveal, however, what were the issues that might "become moot" by an Appeals Court decision.

The judge additionally concluded that "a stay is not appropriate, as many of the issues set forth [above] will require resolution regardless of the outcome of the Appeals Court's review of the [color of title] Order. Of necessity, preparation for the trial of the remaining title and survey issues [including further discovery] will take a great deal of time, effort and expense for all parties. In the meantime, the Homeowners are left with anxious uncertainty as to the title to their homes, and they are unable to sell or mortgage them. The entry of partial judgment on the Homeowners' color of title claim will permit the parties to prepare for the trial of the remaining issues in this case simultaneously with the review of the [color of title] Order, thereby expediting the ultimate resolution of this case and

the potential scope and complexity of civil actions under the federal rules, given their extensive provisions for the liberal joinder of claims and parties. The basic purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all the parties until the final adjudication of the entire case by making an immediate appeal available." 10 Wright, Miller & Kane, Federal Practice and Procedure § 2654, at 33 (1998). "Rule 54(b) thus attempts to balance conflicting policies: (1) the avoidance of time-wasting, expensive piecemeal appellate treatment; (2) the need for prompt appellate review to avoid delay and resulting injustice." Smith & Zobel, Rules Practice § 54.4, at 307 (1977 & Supp. 2000). See infra at 385-389.

closure for all parties as quickly as possible." Again, the judge did not specify which issues might be resolved and eliminated from discovery or trial by an Appeals Court ruling on the intended appeal. Nonetheless, the judge felt able to "expressly find that there is no just reason for delay," as rule 54(b) requires.

The homeowners soon thereafter filed this appeal from the partial judgment entered by the judge, although (as previously noted at note 1, *supra*), by the time the matter was presented for argument before us, all of the homeowners but the Rices had dismissed their appeals with prejudice, indicating thereby less ongoing "anxious uncertainty" about their titles and the marketability of their homes than the judge had hypothesized.

*Holding.* The parties have devoted their appellate arguments to lengthy recitations of various chains of title and deed descriptions and to whether or not the judge erred in applying the doctrine of "adverse possession under color of title" to the facts of this case as presented in the summary judgment papers. We do not reach the merits of the appeal, however, because we deem the rule 54(b) certification to have been both legally and factually inappropriate.[6]

*Discussion.* A. *Standards of review and policy considerations.* As its language reveals (see note 5, *supra*), a valid rule 54(b)

---

[6]The appellees did not protest the rule 54(b) certification below or on appeal, and neither side has briefed the issue. However, because our ability to review the merits of this appeal depends on whether the partial summary judgment, normally a non-appealable interlocutory order (see G. L. c. 231, §§ 113, 109; *Acme Engr. & Mfg. Corp.* v. *Airadyne Co.*, 9 Mass. App. Ct. 762, 764 [1980]; *Acha* v. *Beame*, 570 F.2d 57, 62 [2d Cir. 1978]; and discussion *infra* at 385-387), was properly certified under rule 54(b), and because important policy interests are implicated (see *infra* at 387-389), we raise and resolve the issue sua sponte. See *Paris* v. *Snappy Car Rental, Inc.*, 18 Mass. App. Ct. 968, 969 (1984); *Doe* v. *Roe*, 19 Mass. App. Ct. 270, 271 (1985); *Tiffany* v. *Sturbridge Camping Club, Inc.*, 32 Mass. App. Ct. 173, 178-179 (1992); *Backus Plywood Corp.* v. *Commercial Decal, Inc.*, 317 F.2d 339, 340-341 (2d Cir. 1963); *Spiegel* v. *Trustees of Tufts College*, 843 F.2d 38, 43 (1st Cir. 1988); *Indiana Harbor Belt R.R. Co.* v. *American Cyanamid Co.*, 860 F.2d 1441, 1443 (7th Cir. 1988); *Monument Mgmt. Ltd. Partnership* v. *Pearl*, 952 F.2d 883, 885 (5th Cir. 1992); *Credit Francais Intl., S.A.* v. *Bio-Vita, Ltd.*, 78 F.3d 698, 706 (1st Cir. 1996). We note that Federal decisions are sources of precedent with respect to issues under our rule 54(b) because that rule "was taken verbatim from Fed.R.Civ.P. 54(b)," *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, 9 Mass. App. Ct. 250, 252 (1980), so that in construing our rule we may rely upon Federal cases interpreting its Federal cognate. *Rollins Envtl. Servs., Inc.* v. *Superior Ct.*, 368 Mass. 174, 179-180 (1975) (involving effort by litigant to obtain "piecemeal appellate review" of a nonappealable trial court ruling).

certification requires the confluence of four factors: (1) the action must involve multiple claims or multiple parties; (2) there must be a final adjudication as to at least one, but fewer than all, of the claims or parties;[7] (3) there must be an express finding that there is no just reason for delaying the appeal until the remainder of the case is resolved; and (4) there must be an express direction of the entry of judgment. See Smith & Zobel, Rules Practice § 54.4, at 307 (1977 & Supp. 2000).

Whether there are multiple claims in an action and whether those claims have been finally adjudicated are matters of law subject to plenary review by an appellate court. See *Spiegel* v. *Trustees of Tufts College*, 843 F.2d 38, 43 (1st Cir. 1988); *H & W Indus.* v. *Formosa Plastics Corp.*, 860 F.2d 172, 175 (5th Cir. 1988); *Indiana Harbor Belt R.R. Co.* v. *American Cyanamid Co.*, 860 F.2d 1441, 1444 (7th Cir. 1988); *Sussex Drug Prods.* v. *Kanasco, Ltd.*, 920 F.2d 1150, 1153 (3d Cir. 1990); 10 Wright, Miller & Kane, Federal Practice and Procedure § 2655, at 38-43, & § 2656, at 52 (1998). The determination of the presence or absence of a just reason for delay, on the other hand, is left to the sound discretion of the trial judge and is subject to reversal only for an abuse of that discretion.[8] See *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, 9 Mass. App. Ct. 250, 252 (1980);

---

[7]"The multiple party aspect of rule 54(b) applies only if the [trial] court's judgment disposes of *all* of the rights or liabilities of one or more of the parties" (emphasis supplied). *Sussex Drug Prods.* v. *Kanasco, Ltd.*, 920 F.2d 1150, 1153 (3d Cir. 1990) That is not the case here. The judge's order on summary judgment did not explicitly or implicitly dismiss any of the parties, all of whom continue to struggle with the claims and counterclaims not covered by the partial judgment. Rather, "[t]he issue here is whether the [trial] court's order is a final judgment as to a single *claim* in a multiclaim action" (emphasis supplied). *Ibid.* We refer to the multiple-party language in the cited passage only for completeness.

[8]Although the conventional label justifying appellate reversal of an inappropriate trial court determination that no just reason for delay existed is that the court committed an "abuse of discretion," in the instant situation that term is inapt as well as unfortunate. As Judge Henry J. Friendly has observed, "There are a half dozen differing definitions of 'abuse of discretion,' ranging from ones that would require the appellate court to come close to finding that the trial court had taken leave of its senses [see, e.g., *Davis* v. *Boston Elev. Ry.*, 235 Mass. 482, 502 (1920) (abuse of discretion by judge means "no conscientious judge, acting intelligently, could honestly have taken the view expressed by him")] to others which differ from the definition of [legal] error by only the slightest nuance, with numerous variations between the extremes." Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 763 (1982). Without essaying a complex analysis of the various types and levels of trial

*Acme Engr. & Mfg. Corp.* v. *Airadyne Co.*, 9 Mass. App. Ct. 762, 764 (1980); *United States Trust Co.* v. *Herriott,* 10 Mass. App. Ct. 313, 321-322 (1980); *She Enterprises, Inc.* v. *License Commn. of Worcester,* 10 Mass. App. Ct. 696, 698 n.1 (1980); *Sears, Roebuck & Co.* v. *Mackey,* 351 U.S. 427, 437 (1956); *H & W Indus.* v. *Formosa Plastics Corp.,* 860 F.2d at 175; *Indiana Harbor Belt R.R. Co.* v. *American Cyanamid Co.,* 860 F.2d at 1444; *Sussex Drug Prods.* v. *Kanasco, Ltd.,* 920 F.2d at 1153; 10 Wright, Miller & Kane, Federal Practice and Procedure § 2659, at 105-107.

When applying rule 54(b), both the trial court in the first instance and an appellate court on review must ever bear in mind the rule's underlying purpose of balancing the need for immediate review, based on the likelihood of injustice or hardship to the parties of a delay in entering a final judgment as to part of the case, against the appellate courts' "traditional abhorrence of piecemeal appellate review," *Atkinson's Inc.* v. *Alcoholic Bevs. Control Commn.,* 15 Mass. App. Ct. 325, 327 (1983), as a matter of sound judicial administration. See note 5, *supra; United States Trust Co.* v. *Herriott,* 10 Mass. App. Ct. at 327; *In re Massachusetts Helicopter Airlines, Inc.,* 469 F.2d 439, 441 (1st Cir. 1972); *Allis-Chalmers Corp.* v. *Philadelphia Elec. Co.,* 521 F.2d 360, 363 (3d Cir. 1975); *Pahlavi* v. *Palandjian,* 744 F.2d 902, 903-904 (1st Cir. 1984); *Consolidated Rail Corp.* v. *Fore River Ry. Co.,* 861 F.2d 322, 325 (1st Cir. 1988); 10 Wright, Miller & Kane, Federal Practice and Procedure § 2654, at 35-36.

court discretion encountered by appellate tribunals, it is sufficient for present purposes to quote Chief Justice John Marshall, who stated that most discretionary choices are not left to a trial court's unbridled "inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *United States* v. *Burr,* 25 F. Cas. 30, 35 (C.C.D. Va. 1807) (No. 14692d). Compare *Commonwealth* v. *Carter,* 423 Mass. 506, 510 (1996) ("Virtually all the decisions that a trial judge must make, even when the judge has discretion as to the precise result, are decisions of law"). As the discussion, *infra* at 394-402, demonstrates, in the rule 54(b) context, abuse of discretion has no derogatory or invidious connotation and does not imply that the judge below committed any egregious mistake — indeed, it is clear from the record that the judge addressed the issues conscientiously — but rather it signifies only that the decisionmaking process was not completely conducted within the established framework of relevant standards and did not take into account all the proper factors identified by relevant case law as necessary to inform the discretionary exercise. Cf. *Curtiss-Wright Corp.* v. *General Elec. Co.,* 446 U.S. 1, 8-11 (1980).

The policy disapproving piecemeal appeals long preceded rule 54(b) at both the Federal and State levels. See *id.* at 36. See also *Sears, Roebuck & Co.* v. *Mackey*, 351 U.S. at 438 ("historic federal policy against piecemeal appeals"); *Brunswick Corp.* v. *Sheridan*, 582 F.2d 175, 183 (2d Cir. 1978); *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 42 ("long-settled and prudential policy against the scattershot disposition of litigation"); *H & W Indus.* v. *Formosa Plastics Corp.*, 860 F.2d at 175; *Consolidated Rail Corp.* v. *Fore River Ry. Co.*, 861 F.2d at 325 ("longstanding policy against allowing numerous interim dispositions throughout an action"); *Sussex Drug Prods.* v. *Kanasco, Ltd.*, 920 F.2d at 1153; *Nichols* v. *Cadle Co.*, 101 F.3d 1448, 1449 (1st Cir. 1996) ("piecemeal appellate review invites mischief"). It remains the basic policy with rule 54(b) certification the "infrequent" exception. See *Panichella* v. *Pennsylvania R.R. Co.*, 252 F.2d 422, 455 (3d Cir. 1958); *Pahlavi* v. *Palandjian*, 744 F.2d at 903; *Harriscom Svenska AB* v. *Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991).

The Massachusetts policy disfavoring such premature appeals has an equally long history and has been as vigorously pronounced. It is a "general rule of practice so early announced, so frequently reiterated and so constantly followed, and so manifestly in the interests of parties litigant and the general public" that failure of litigants to observe it "can serve no purpose but to contribute to the loss of confidence in the courts as the avenue for adjudication of private dispute with reasonable dispatch." *Pollack* v. *Kelly*, 372 Mass. 469, 470-471, 472 (1977), quoting from *Weil* v. *Boston Elev. Ry.*, 216 Mass. 545, 549 (1914). See *Vincent* v. *Plecker*, 319 Mass. 560, 562-563 & n.1 (1946); *Scola* v. *Director of the Div. of Employment Sec.*, 326 Mass. 180, 181 (1950); *Albano* v. *Jordan Marsh Co.*, 367 Mass. 651, 654 (1975); *Rollins Envtl. Servs., Inc.* v. *Superior Ct.*, 368 Mass. 174, 178-179 (1975); *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 612 (1980); *Manousos* v. *Sarkis*, 382 Mass. 317, 321 (1981); *Atkinson's Inc.* v. *Alcoholic Bevs. Control Commn.*, 15 Mass. App. Ct. at 327.[9]

Because of the bedrock policy against premature and piecemeal appeals, the Supreme Judicial Court has declared that

---

[9]Though several of the cited cases were decided before the adoption of the Massachusetts Rules of Civil Procedure in 1974, they remain nonetheless persuasive in that their pronouncements regarding piecemeal appeals have been relied upon or echoed by cases decided after the codification of the rules.

"[w]e do expect strict compliance" in dealing with the narrow exception to that policy created by rule 54(b). *Appleton* v. *Hudson*, 397 Mass. 812, 813 n.3 (1986). Consequently, certifications under rule 54(b) "should not be granted routinely or as a courtesy or accommodation to counsel." *Panichella* v. *Pennsylvania R.R. Co.*, 252 F.2d at 455. See *Acme Engr. & Mfg. Corp.* v. *Airadyne Co.*, 9 Mass. App. Ct. at 764; *United States Trust Co.* v. *Herriott*, 10 Mass. App. Ct. at 322; *High-Tech Sales, Inc.* v. *Olektron Corp.*, 31 Mass. App. Ct. 912, 913 (1991); *Campbell* v. *Westmoreland Farm, Inc.*, 403 F.2d 939, 942 (2d Cir. 1968). "[O]verly generous use of [rule] 54(b) . . . can create a minefield for litigants and appellate courts alike," *Nichols* v. *Cadle Co.*, 101 F.3d at 1448, and does not further "the interests of sound judicial administration." *Sussex Drug Prods.* v. *Kanasco, Ltd.*, 920 F.2d at 1156. Therefore, the court's rule 54(b) discretion should be "exercised sparingly," *Harriscom Svenska AB* v. *Harris Corp.*, 947 F.2d at 629; and, when the dismissed and the surviving claims are factually and legally overlapping or closely related, such a fragmentation of the case is to be avoided except in "unusual and compelling circumstances." *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 45; *Kersey* v. *Dennison Mfg. Co.*, 3 F.3d 482, 488 (1st Cir. 1993).

In short, rule 54(b) certification is a "special dispensation," *Feinstein* v. *Resolution Trust Corp.*, 942 F.2d 34, 39 (1st Cir. 1991), quoting from *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 44 n.5, which "should be used only 'in the infrequent harsh case.' " *Brunswick Corp.* v. *Sheridan*, 582 F.2d at 183, quoting from *Panichella* v. *Pennsylvania R.R. Co.*, 252 F.2d at 455. See *United States Trust Co.* v. *Herriott*, 10 Mass. App. Ct. at 322; *Morrison-Knudsen Co.* v. *Archer*, 655 F.2d 962, 965 (9th Cir. 1981); *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 42; *Consolidated Rail Corp.* v. *Fore River Ry. Co.*, 861 F.2d at 325. "Rule 54(b) was not meant to animate essentially fragmentary proceedings or to be employed in the absence of sufficiently compelling circumstances." *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 46.

We finally take note of more immediately pressing policy considerations justifying the restrictive and infrequent use of rule 54(b). It is notorious that the caseload of this court has increased so dramatically, and the court is so overburdened with an ever-growing volume of appeals to be decided, that "[t]he appellate administration of justice in the Commonwealth faces a

crisis requiring immediate action." Appellate Administration of Justice — A Crisis in Massachusetts, Report of the Boston Bar Association Task Force Committee on Massachusetts Appeals Court Judicial Positions 4 (May 3, 2000). "Rule 54(b) liberally construed and applied has a tremendous potential to increase our caseload still more rapidly, because its natural tendency is to generate multiple appeals in the same case." *Minority Police Officers Assn.* v. *South Bend,* 721 F.2d 197, 200 (7th Cir. 1983). Certifications that fail to recognize the limited and exceptional function of rule 54(b) and to consider the judicial administrative interests involved "result in a substantial waste of [already scarce] judicial resources." *Sussex Drug Prods.* v. *Kanasco, Ltd.,* 920 F.2d at 1156.

With these principles and policies in mind, we assess the rule 54(b) certification at issue here.

B. *Multiple claims and finality.* The first step in appellate review of rule 54(b) cases is to "scrutinize the [trial] court's evaluation of . . . the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units." *Curtiss-Wright Corp.* v. *General Elec. Co.,* 446 U.S. 1, 10 (1980). This case fails to survive that initial scrutiny.

"Whether 'multiple claims' exist . . . is a complex question involving an area of the law characterized by the absence of settled guidelines." *Lexington Educ. Assn.* v. *Lexington,* 15 Mass. App. Ct. 749, 750-751 n.3 (1983). See *Minority Police Officers Assn.* v. *South Bend,* 721 F.2d at 199 (it is often "unclear whether a complaint or other pleading presents 'one claim for relief' or multiple claims"); 10 Wright, Miller & Kane, Federal Practice and Procedure § 2657, at 67-81.[10] Although claims and counterclaims are generally considered "separate claims under . . . rule [54(b)]," *New England Canteen Serv., Inc.* v. *Ashley,* 372 Mass. 671, 677 (1977), "the presence of a counterclaim . . . weighs heavily against the grant of 54(b) certification," *Allis-Chalmers Corp.* v. *Philadelphia Elec. Co.,* 521 F.2d at 366, particularly when "[t]here is a substantial interdependence and overlap between" dismissed

[10]The Seventh Circuit, in an effort to minimize the appellate burden of rule 54(b) certification, has adopted the position in reviewing them that "[t]he presumption should be *against* characterizing a pleading as containing multiple claims for relief rather than one claim." *Minority Police Officers Assn.* v. *South Bend,* 721 F.2d at 200 (emphasis supplied).

claims and pending counterclaims. *Credit Francais Intl., S.A.* v. *Bio-Vita, Ltd.*, 78 F.3d 698, 707 (1996).

Even if a case involves multiple claims, however, the rule also requires that at least one of those claims be decided fully and finally. See *Liberty Mut. Ins. Co.* v. *Wetzel*, 424 U.S. 737, 743 (1976); *Continental Airlines, Inc.* v. *Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1524 (9th Cir. 1987); *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 42-43; *Consolidated Rail Corp.* v. *Fore River Ry. Co.*, 861 F.2d at 325; *American Motorists Ins. Co.* v. *Levolor Lorentzen, Inc.*, 879 F.2d 1165, 1171 (3d Cir. 1989); *Monument Mgmt. Ltd. Partnership* v. *Pearl*, 952 F.2d 883, 885 (5th Cir. 1992); 10 Wright, Miller & Kane, Federal Practice and Procedure § 2657, at 67-68. "To satisfy the requirements of Rule 54(b) . . . the claim [finally] adjudicated must be a 'claim for relief' separable from and independent of the remaining claims in the case." *Brunswick Corp.* v. *Sheridan*, 582 F.2d at 182. See *American Motorists Ins. Co.* v. *Levolor Lorentzen, Inc.*, 879 F.2d at 1171 ("threshold issue . . . is whether the order appealed from finally resolved at least one entire claim, leaving at least one separate claim unresolved").

If, instead, an asserted claim is merely partially adjudicated, leaving unadjudicated related claims that largely depend on the same facts or as to which the factual differences are minor, the several factually related claims are not "genuinely separate claims," *Minority Police Officers Assn.* v. *South Bend*, 721 F.2d at 200-201, and such a ruling should not be certified as a final judgment under rule 54(b). *Ibid.* See *Acme Engr. & Mfg. Corp.* v. *Airadyne Co.*, 9 Mass. App. Ct. at 764; *Acha* v. *Beame*, 570 F.2d 57, 62 (2d Cir. 1978); *Indiana Harbor Belt R.R. Co.* v. *American Cyanamid Co.*, 860 F.2d at 1444; *Sussex Drug Prods.* v. *Kanasco, Ltd.*, 920 F.2d at 1154; Smith & Zobel, Rules Practice § 54.5, at 308; 10 Wright, Miller & Kane, Federal Practice and Procedure § 2656, at 54-56.

In deciding whether one of several separately stated counts are "genuinely separate claims," as opposed to merely a portion of a "single [litigation] unit," *Curtiss-Wright Corp.* v. *General Elec. Co.*, 446 U.S. at 10, a determinative, indeed critical, distinction has been drawn between "separate 'claim[s] for relief' within the meaning of the rule . . . [and] different theories of recovery arising out of the same cause of action." *Lubanes* v. *George*, 386 Mass. 320, 323 n.5 (1982). See *American Motorists Ins. Co.* v. *Levolor Lorentzen, Inc.*, 879 F.2d at

1171; 10 Wright, Miller & Kane, Federal Practice and Procedure § 2657, at 67-68 & 70-72. "A [party] presents multiple claims for relief . . . when the possible recoveries are more than one in number and not mutually exclusive or, stated another way, when the facts give rise to more than one legal right or cause of action. . . ." *Id.* at 76-77. See *Willhauck* v. *Halpin*, 919 F.2d 788, 793 n.18 (1st Cir. 1990) (the existence of multiple claims "almost always implies claims based on more than one set of facts giving rise to more than a single liability"). Conversely, when a party asserts only one legal right, even if seeking multiple remedies, there is only a single claim for relief for rule 54(b) purposes. See *Liberty Mut. Ins. Co.* v. *Wetzel*, 424 U.S. at 743 n.4; *Acha* v. *Beame*, 570 F.2d at 62; *Sussex Drug Prods.* v. *Kanasco, Ltd.*, 920 F.2d at 1154; *Arizona State Carpenters Pension Trust Fund* v. *Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991); *Monument Mgmt. Ltd. Partnership* v. *Pearl*, 952 F.2d at 885; 10 Wright, Miller & Kane, Federal Practice and Procedure § 2657, at 76-79.

Similarly, "[a]lternative [legal] theories of recovery based on the same factual situation are but a single claim, not multiple ones," under rule 54(b). *Sussex Drug Prods.* v. *Kanasco, Ltd.*, 920 F.2d at 1154. See *Cott Bev. Corp.* v. *Canada Dry Ginger Ale, Inc.*, 243 F.2d 795, 796 (2d Cir. 1957); *Indiana Harbor Belt R.R. Co.* v. *American Cyanamid Co.*, 860 F.2d at 1445; *American Motorists Ins. Co.* v. *Levolor Lorentzen, Inc.*, 879 F.2d at 1171; *National Assn. for the Advancement of Colored People* v. *American Family Mut. Ins. Co.*, 978 F.2d 287, 291-292 (7th Cir. 1992). In a case where the issue adjudicated amounts to nothing more than a determination of one of several legal theories on which the same legal right is premised, the judge should not certify the ruling for immediate appeal. *Leopold* v. *Fitzgerald*, 421 F.2d 838, 839 (2d Cir. 1970).

Finally, there is only a single claim for relief, making a separate appeal under rule 54(b) inappropriate, in a case where the facts underlying the adjudicated portion of the case are largely the same as or substantially overlap those forming the basis for the unadjudicated issues. *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 45 (54[b] appeal not appropriate where there is "substantial . . . imbrication between the dismissed count[] and the surviving count . . . [or t]he factual underpinnings of the adjudicated and nonadjudicated counts are . . . inextricably intertwined"). Though claims may be distinct even

if they have some factual overlap, *Minority Police Officers Assn.* v. *South Bend*, 721 F.2d at 200, "claims are not separate for Rule 54(b) purposes if the facts they depend on are largely the same . . . . The burdens of multiple appeals are greatest in a case where the successive appeals bring up the same facts." *Id.* at 201.

The ruling on appeal in this case addressed only that aspect of the homeowners' adverse possession claim which purported to rest on the doctrine of color of title. The color of title issue clearly does not constitute an entire "claim" for purposes of rule 54(b), but is rather merely an alternative theory of recovery not properly encompassed by the rule. The sole legal right the homeowners seek to vindicate, and the only real "claim"[11] they assert in their complaint, is that of title to the tracts they respectively occupy in the locus; and the only result they seek is retention of their possessory right to the parcels on which their homes have been built. The two methods by which the homeowners seek to prove their good title, namely actual adverse possession and adverse possession by color of title, can be accurately described as "merely . . . alternate grounds for relief, each of which arose out of the same aggregate of operative facts," in that they both "stem from essentially the same factual averments . . . in a situation involving the same parties and, basically, the same facts." *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 44 n.6, 45. The same "factual underpinnings of the adjudicated . . . count[]," *id.* at 45 — namely, the precise locations and boundaries of the various lots involved under the many deeds in the several chains of title and the actual activities that took place thereon claimed to constitute successful adverse possession — are also critical to the unadjudicated counts, i.e., the remainder of the case that continues and must be tried.

---

[11]Cf. *Lubanes* v. *George*, 386 Mass. at 323 n.5 ("allegations of battery and negligence do not present separate 'claims for relief' within the meaning of the rule, but rather different theories of recovery arising out of the same cause of action"); *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 45 ("The common denominator of all counts is [the plaintiff's] contention that she was wrongfully denied tenure. To be sure, she posits an assortment of possible reasons for the tenure denial. . . . But those possibilities . . . all stem from the same overall series of events"); *American Motorists Ins. Co.* v. *Levolor Lorentzen, Inc.*, 879 F.2d at 1171 (referring to defendant seeking to uphold 54(b) certification, the court said that "the theories of why it does not have to defend are not its claim. Rather, its claim is that it does not have to defend").

The ruling below correctly recognized that both the home-owners' rejected "adverse possession under color of title" claim and their conventional adverse possession claim depended on the same proof required for satisfaction of all of the elements of adverse possession as to the central portion of the real estate they assert title to (i.e., the portion their title predecessors had actually occupied openly, notoriously, continuously and adversely for at least twenty years). Consequently, whether we were to affirm or reverse the partial summary judgment in favor of the appellees on the "color of title" issue, the homeowners' evidentiary burden at trial in establishing their title by virtue of adverse possession will not be reduced in any material way. They will still have to establish the locations and boundaries of the various areas in dispute at trial by registry records, survey-ing materials, and the like and produce historical evidence of the fact and extent of actual adverse possession with respect to the contested subdivision, just as they would have to do to prevail on the "color of title" theory (see *supra* at 381-385). The only significant difference *might* be in outcome, as to the extent of the relief to which they prove themselves entitled (i.e., the dimensions of the areas they prove to have been adversely possessed and any additional areas that they might be able to show were covered by their deeds under the "color of title" doctrine). In short, certification was inappropriate because "the same essential facts underlie all of the [homeowners'] claims . . . [and consequently] our resolution of the [legal] issues be-ing appealed, however fascinating or important they may be, 'will not simplify, shorten or expedite the trial of any of the other claims still pending in the [trial] court.' " *Tiffany* v. *Stur-bridge Camping Club, Inc.,* 32 Mass. App. Ct. 173, 178-179 (1992), quoting from *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.,* 9 Mass. App. Ct. at 252.

We conclude as matter of law that the partial judgment entered below did not finally adjudicate a separate claim but merely eliminated one of the homeowners' theories of relief with respect to the unitary claim they advance, legal title to their respective properties. Even though deciding the question formally presented, regarding the contours of the doctrine of adverse possession under color of title, might be of marginal utility in view of the relatively limited number of such cases in this Commonwealth, it will ill-serve the more fundamental interests of sound judicial administration and the proper alloca-

tion of scarce judicial resources, because essentially the same facts as underlie that legal issue will in all likelihood come before us again in an appeal by either or all of the parties after the final resolution of the entire case in the trial court. As the Second Circuit has aptly opined, "We cannot decide the issues intelligently piecemeal and, if we so attempt, are sure to find ourselves uttering pious generalities only which will come back to plague us later." *Campbell* v. *Westmoreland Farm, Inc.*, 403 F.2d at 942-943, quoting from *Cott Bev. Corp.* v. *Canada Dry Ginger Ale, Inc.*, 245 F.2d at 796. See *Minority Police Officers Assn.* v. *South Bend*, 721 F.2d at 201 (because the factual bases for the adjudicated and the nonadjudicated claims are "largely the same," even if the court ruled on the legal issues presented by the certified appeal, "we would have to relearn the same set of facts if and when the case came back to us on appeal from the [trial] judge's final judgment on the [pending] claims").

C. *Was there "no just reason for delay?"* Though the lack of a final judgment on a truly separate claim is itself sufficient ground to dismiss this appeal, dismissal is also appropriate because the certification was not supported by the requisite analysis and by a sufficient basis for the conclusion that no just reason for delay existed.

The determination of the presence or absence of a just reason for delay requires that "the facts of each case be closely examined to ensure that allowing an appeal will not wrongly fragment the case. . . . A court should also examine whether [certification] will advance the interests of judicial administration and public policy." *Consolidated Rail Corp.* v. *Fore River Ry. Co.*, 861 F.2d at 325. See *United States Trust Co.* v. *Herriott*, 10 Mass. App. Ct. at 322 (certification is proper "only where, after balancing the competing factors, the judge in the trial court can say with assurance based on facts in the record that finality of judgment should be ordered to advance the interests of sound judicial administration . . . , and to prevent the 'danger of hardship or injustice' posed by delay"); *Allis-Chalmers Corp.* v. *Philadelphia Elec. Co.*, 521 F.2d at 364 (listing the several factors to be evaluated by appellate courts in considering the propriety of such a determination).

The certification at issue did not emerge from an identification or balancing of the factors that must inform a discretionary determination as to the existence, vel non, of a just reason for delay; and, to the extent it alluded to potentially relevant fac-

tors, either they were not tied to the rule 54(b) analysis or the findings thereon were unsupported by the record.[12]

i. *Consistency with public policy.* The prime factor of facilitating appropriate judicial administration, by avoiding premature and piecemeal appeals, is not mentioned in the certification analysis, despite the mandate to balance the need for the extraordinary relief of immediate review with that historic policy. Failure to account for so vital a consideration cannot be deemed consistent with the "strict compliance" expected by the Supreme Judicial Court in applying rule 54(b). *Appleton* v. *Hudson*, 397 Mass. at 813 n.3. Acknowledgment of a measured concern for judicial economy was almost irresistibly demanded on this record, given the commonality of the issues presented by all of the claims and counterclaims, as well as the recognition in the certification decision of the many complex issues remaining to be decided outside of the certification, including the entirety of the homeowners' proof of adverse possession. That scenario virtually guarantees our obligation to consider the same bundle of facts a second time.

ii. *Nature of the case.* The record does not establish that this case presents any of the "unusual and compelling circumstances," *Morrison-Knudsen Co.* v. *Archer*, 655 F.2d at 966, or constitutes "the infrequent harsh case," *Brunswick Corp.* v. *Sheridan*, 582 F.2d at 183, or involves the "danger of hardship

---

[12]A number of Massachusetts decisions have highlighted the nature of the requisite analysis. See *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, 9 Mass. App. Ct. at 252-253 (the trial judge should "stat[e] the reasons for his certification that there is no just reason for delay," addressing, among other factors, whether "any hardship or injustice will result if the plaintiff is required to try its case . . . before securing appellate review," whether intermediate review of the judgment certified will or "will not simplify, shorten or expedite the trial of any of the other claims still pending in the [trial] [c]ourt," and whether the questions sought to be raised by the appeal might "become moot if the [trier of fact ultimately found] . . . for the [appellee]"); *United States Trust Co.* v. *Herriott*, 10 Mass. App. Ct. at 322 (noting as another important factor whether "the remaining claims and counterclaims were factually and legally distinct from the claim" certified). See also *High-Tech Sales, Inc.* v. *Olektron Corp.*, 31 Mass. App. Ct. 912, 913 (1991) (reiterating the *J.B.L. Constr.* factors and adding that trial judge must also demonstrate the exercise of "special care" when certifying issues in a complaint where there is also a counterclaim, in order to determine the factual relationship between the two); *Kobico, Inc.* v. *Pipe*, 44 Mass. App. Ct. 103, 105 n.2 (1997) (reiterating the factors mentioned in *J.B.L. Constr.* and adding thereto whether the appealed and the remaining issues "are overlapping [and] . . . raise virtually identical issues" and the interest of "judicial economy at the appellate level").

or injustice," *Acme Engr. & Mfg. Corp.* v. *Airadyne Co.*, 9 Mass. App. Ct. at 764, quoting from *Campbell* v. *Westmoreland Farm, Inc.*, 403 F.2d at 942, or any other extraordinary feature that should exist to justify recourse to the exceptional procedure authorized by rule 54(b). To the contrary, the case appears to be a garden-variety dispute by rival private claimants over title to a piece of land, of the sort that has been a characteristic feature of American (and earlier English) society since the common law of real estate began to be established centuries ago.[13]

Although reference was made in the certification ruling to the "Homeowners['] . . . anxious uncertainty as to the title to their homes," the reference was not directed to the appropriateness of invoking rule 54(b) because of the danger of special hardship or injustice or harsh outcomes for the homeowners from any delay in appealing. Rather, the remark was made in connection with a denial of the homeowners' motion for a stay of all proceedings while they prosecuted a rule 54(b) appeal; a stay was expressly declared to be inappropriate because of the "great deal of time, effort and expense for all parties" in developing and preparing the noncertified issues for trial. Even if the observation had been aimed at this critical rule 54(b) factor, however, it fell far from the mark, since the homeowners' "anxious uncertainty" as to their title could only be relieved by their success in proving their basic adverse possession case, which remained the subject of discovery and trial.

iii. *Mootness.* Among the most significant factors to be

---

[13]Because of the long-recognized inevitability and ubiquity of controversies over land, the Massachusetts Bay Colony enacted a recording act as early as 1640 for the declared purpose that "[e]very man may know what estate or interest other men may have in houses, lands or other hereditaments they are to deal." See Eno & Hovey, Real Estate Law § 2.1, at 13 n.1 (1995). The instant real estate controversy also does not raise any issue of public import transcending the peculiar concerns of the litigants, a factor whose presence might well bring it within the ambit of rule 54(b). Contrast *Lexington Educ. Assn.* v. *Lexington*, 15 Mass. App. Ct. at 751 n.3 (immediate appeal appropriate because the partial judgment construing G. L. c. 32B "deals with a subject of considerable importance to municipalities throughout the Commonwealth and contradicts the Group Insurance Commission's interpretation of G. L. c. 32B, upon which many public authorities may have relied . . . [thereby] creat[ing] uncertainty and confusion over an ongoing matter of public administration, previously thought to be settled"); *Tiffany* v. *Sturbridge Camping Club, Inc.*, 32 Mass. App. Ct. at 174 (questionable certified partial summary judgment addressed only because the matter involved "issues of first impression regarding the applicability and retroactivity of G. L. c. 183B, the Real Estate Time-Share Act").

considered in deciding if there is no just reason for delaying the appeal — closely related to the concern for appellate judicial economy — is "the possibility that the need for [rule 54(b)] review might . . . be mooted by future developments in the [trial] court." *Allis-Chalmers Corp.* v. *Philadelphia Elec. Co.*, 521 F.2d at 364. "[S]uch a possibility [i]s a major negative in the Rule 54(b) equation," *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 45, and "must weigh heavily against Rule 54[b] certification." *Consolidated Rail Corp.* v. *Fore River Ry. Co.*, 861 F.2d at 326. See *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, 9 Mass. App. Ct. at 253.

The possibility of mootness is additionally present when a plaintiff appeals the dismissal of some of his "claims" while others are still pending upon which he yet may be successful and which may gain him the entire remedy he seeks, thereby obviating his need to appeal altogether. See *Brunswick Corp.* v. *Sheridan*, 582 F.2d at 184-185; *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 44-45; *Consolidated Rail Corp.* v. *Fore River Ry. Co.*, 861 F.2d at 326. The fact that resolution of the pending claim might well have such an effect militates against a rule 54(b) certification. *Shrader* v. *Granninger*, 870 F.2d 874, 879 (2d Cir. 1989).

Both prospects of mootness exist here. The homeowners' goal is an adjudication of their good title to their respective lots in the subdivision. If they prevail on their pending adverse possession claim, they may well establish such title and retain their land — quite possibly all or a "substantial portion" thereof, depending on the nature and extent of their proof — and thus may never need to appeal the color of title ruling at all.[14] Although a successful adverse possessor might be able to establish entitlement to more extensive title than that which proof of actual adverse possession would provide were he to succeed as well on a color of title theory, see, e.g., *Norton* v.

---

[14]In fact, the homeowners "indicated" below that they intended to appeal the color of title ruling "in the event" that they did not succeed in the remainder of the case, thereby implying that "in the event" they won on their remaining theories they would not pursue an appeal. It bears repeating in this respect (see note 1, *supra*) that the Rices, owners of a single lot in the subdivision, are the sole remaining appellants on the color of title appeal, all others having dismissed their appeals with prejudice. This further undermines the reality of the homeowners' assumed "anxious uncertainty" as to their title, which was not in any event a support for the conclusion that an immediate appeal and an early appellate ruling were needed.

*West*, 8 Mass. App. Ct. 348, 351 (1979), such a highly contingent outcome cannot justify multiple appeals, particularly when the homeowners' burden of proving all of the elements of adverse possession remains for trial regardless of this appeal. The obverse mootness possibility is equally destructive of certifiability: the homeowners' failure to satisfy their trial burden as to proof of adverse possession will moot their color of title theory and save this court the toil of hearing successive appeals.[15] See *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, 9 Mass. App. Ct. at 253; *Brunswick Corp.* v. *Sheridan*, 582 F.2d at 184-185.

iv. *Similarity or factual overlap of claims*. An analysis of the degree of factual and legal relationship between the claims on appeal and the claims remaining pending in the trial court must inform the certification determination.[16] See *Shrader* v. *Granninger*, 870 F.2d at 878; *Credit Francais Intl., S.A.* v. *Bio-Vita, Ltd.*, 78 F.3d at 706. The greater the degree of similarity or factual overlap, the less persuasive the case for certification. See *Pahlavi* v. *Palandjian*, 744 F.2d at 904; *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 45 ("similarity of either legal or

---

[15]As indicated earlier, one premise of the certification was that "[s]ome, but not all of these [remaining] issues, may become moot depending on the Appeals Court's disposition of Homeowners' [color of title appeal]," although no such potentially moot issues were specified. We do not, however, see how proof of the remaining core issues, the "fact and extent of adverse possession," would be affected regardless of our ruling on the merits of the color of title appeal. If we were to uphold the dismissal of the color of title theory, the homeowners would still be required to prove "traditional" adverse possession if they are to succeed in establishing good title to any portion of their properties. If we were to reverse the dismissal of the color of title theory, the homeowners could proceed to trial on that theory, but it would still require (as was acknowledged below) proof of all of the very same elements of adverse possession. Thus, no aspect of the future trial below would be significantly assisted or simplified by our rendering an opinion on the color of title issue. See subsection vi, *infra*.

[16]As discussed *supra* at 390-394, the relationship between adjudicated and unadjudicated claims is critical in the initial, "jurisdictional" phase of the rule 54(b) analysis, i.e., in identifying whether there are multiple claims and, if so, whether one of those claims has been decided with finality, as well as in the discretionary phase of determining whether there is just reason for delaying an immediate appeal. See *Indiana Harbor Belt R.R. Co.* v. *American Cyanamid Co.*, 860 F.2d at 1444 n.3, analyzing *Curtiss-Wright Corp.* v. *General Elec. Co.*, 446 U.S. at 8 & 10. See also *Cold Metal Process Co.* v. *United Engr. & Foundry Co.*, 351 U.S. 444, 452 (1956) (relationship between adjudicated and unadjudicated claims bears on the "exercise of [a judge's] discretion" pursuant to rule 54[b]).

factual issues [or both] [*sic*] militates strongly against invocation of Rule 54[b]"); *Indiana Harbor Belt R.R. Co.* v. *American Cyanamid Co.*, 860 F.2d at 1444; *Consolidated Rail Corp.* v. *Fore River Ry. Co.*, 861 F.2d at 326 (same); *Harriscom Svenska AB* v. *Harris Corp.*, 947 F.2d at 629 ("a Rule 54[b] certification of the dismissal of fewer than all the claims in an action should not be granted if the same or closely related issues remain to be litigated"); *National Assn. for the Advancement of Colored People* v. *American Family Mut. Ins. Co.*, 978 F.2d at 292 ("[t]he facts and theories separated for immediate appeal should not overlap with those retained").[17]

---

[17]These principles apply not only to the connection between the several "claims" one party may advance, but also to the similarities between one party's claims and an opposing party's counterclaims. "[C]ounterclaims, whether compulsory or permissive, present no special problems for Rule 54(b) determinations; counterclaims are not to be evaluated differently from other claims . . . . Like other claims, their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought." *Curtiss-Wright Corp.* v. *General Elec. Co.*, 446 U.S. at 9. See *United States Trust Co.* v. *Herriott*, 10 Mass. App. Ct. at 322; *Pahlavi* v. *Palandjian*, 744 F.2d at 904. See also *Brunswick Corp.* v. *Sheridan*, 582 F.2d at 183 (where "primary claim and . . . counterclaim were inextricably interrelated," allowing immediate appeal on dismissal of counterclaim improvident). Because there may be a formalistic tendency to treat at least permissive counterclaims as severable from principal claims, "special care [is] called for [in] the presence of a counterclaim." *High-Tech Sales, Inc.* v. *Olektron Corp.*, 31 Mass. App. Ct. at 913. See *DiCicco* v. *Berwick*, 27 Mass. App. Ct. 312, 315 (1989); *Tiffany* v. *Sturbridge Camping Club, Inc.*, 32 Mass. App. Ct. at 179. (Here, of course, both sets of counterclaims were "so closely connected," *Potier* v. *A.W. Perry, Inc.*, 286 Mass. 602, 608 [1934], as to constitute compulsory counterclaims. See Reporter's Notes to Mass.R.Civ.P. 13[a], Mass. Gen. Laws Ann., Rules of Civil Procedure, at 151-152 [West 1992]). We do not discern the exercise of that "special care" in this case, where it was acknowledged below that "because they share common parties and both relate to the ownership of a certain parcel of land," the consolidated cases were "*in fact almost mirror images of one another*" (emphasis added). Although an immediate appeal was allowed to proceed in the homeowners' original action "on the claim of adverse possession under color of title only asserted by [the homeowners]," the ruling explicitly noted a number of issues remained for trial, including the appellees' counterclaims — the very claims which were "mirror images" of the homeowners' claims, and presumptively, therefore, inappropriate for rule 54(b) certification. We conclude that the manifest imbrication of the homeowners' claims, inter se and with the appellees' counterclaims, in itself dictated against rule 54(b) certification, in the absence of any "unusual and compelling circumstances," *Morrison-Knudsen Co.* v. *Archer*, 655 F.2d at 966, which are not here presented. See *Pahlavi* v. *Palandjian*, 744 F.2d at 904-905.

As discussed in section B, *supra*, the homeowners' color of title theory, their adverse possession claim and counterclaim, and the appellees' claims and counterclaims all depend on precisely the same bundle of operative facts, which remain pending in the Land Court. On this ground alone, appellate consideration of the color of title issue is neither warranted nor appropriate under the policies animating the exceptional procedural relief provided by rule 54(b). See note 16, *supra.*

v. *Similarity of parties.* The entry of a final judgment pursuant to rule 54(b) "is not to be done lightly . . . when the action remains pending as to all parties." *Brunswick Corp.* v. *Sheridan,* 582 F.2d at 183. "It will be a rare case where Rule 54(b) can appropriately be applied when the contestants on appeal remain, simultaneously, contestants below." *Spiegel* v. *Trustees of Tufts College,* 843 F.2d at 44. See *Shrader* v. *Granninger,* 870 F.2d at 878; *Nichols* v. *Cadle Co.,* 101 F.3d at 1449. Compare *Dattoli* v. *Hale Hosp.,* 400 Mass. 175, 176-177 (1987) (54[b] certification appropriate when no claims remain pending against certain defendants); *Feinstein* v. *Resolution Trust Co.,* 942 F.2d at 39-40 (dismissal of all claims against certain defendants "is the rare case where the absence of Rule 54[b] findings can be overlooked").

Here, the certification ruling did not appear to take into account the fact that all of the homeowners continue to battle all of the appellees in the Land Court with respect to the nonadjudicated claims and issues. Indeed, that only two of the original twenty-one appellants (the Rices) sustain this appeal is persuasive evidence that a ruling from this court on the "color of title" issue as to the Rices' unique circumstances alone is both unlikely to assist any other homeowner and unnecessary at this early date. See note 14, *supra.*

vi. *Expediting trial.* Massachusetts and Federal courts have long held that if deciding "the appeal [pursuant to a rule 54(b) determination] will not simplify, shorten or expedite the trial of the other claims still pending in the [trial] court . . . certification was improvident," *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.,* 9 Mass. App. Ct. at 252-253 — at least when (as here) the two sets of claims are substantially related or overlapping, there is no demonstration of hardship or injustice resulting from delaying the partial appeal until the normal course following a dispositive final judgment, and a trial of remaining issues could effectively moot the rule 54(b) issue. See *ibid.*; note 14, *supra.*

See also *Paris* v. *Snappy Car Rental, Inc.*, 18 Mass. App. Ct. 968, 969 (1984); *Kobico, Inc.* v. *Pipe*, 44 Mass. App. Ct. 103, 105 n.2 (1997); *Campbell* v. *Westmoreland Farm, Inc.*, 403 F.2d at 942. Compare *Allis-Chalmers Corp.* v. *Philadelphia Elec. Co.*, 521 F.2d at 364; *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 46; *Credit Francais Intl., S.A.* v. *Bio-Vita, Ltd.*, 78 F.3d at 707-708 (all holding that the mere possibility that an immediate appeal might expedite trial is not in itself a sufficient reason for certification). The record here fails to persuade us that our resolution of the issues sought to be raised by this interlocutory appeal will in any appreciable way simplify, shorten or expedite the trial of any of the other claims or counterclaims. Cf. *Tiffany* v. *Sturbridge Camping Club, Inc.*, 32 Mass. App. Ct. at 178-179.[18]

vii. *Sufficient statement of reasons*. Although broad discretion is conferred on the trial court when deciding whether there is no just reason for delay, it is the obligation of an appellate tribunal whose jurisdiction has been invoked to determine the propriety of that exercise of discretion. *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, 9 Mass. App. Ct. at 252. To that end, the trial court "should ordinarily make specific findings setting forth the reasons for its order," *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 43 & n.4; i.e., the court should "specifically enumerate all of the factors and concerns relied upon when reaching its [certification] decision." *Consolidated Rail Corp.* v. *Fore River Ry. Co.*, 861 F.2d at 325.[19] "It is essential . . . that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law." *Protective Committee* v. *Anderson*, 390 U.S. 414, 434 (1968). "We have over the past decade frequently declared the need for such findings when the judge's reasons are not, as they are not here, clear on the record," *Tiffany* v. *Sturbridge Camping Club, Inc.*, 32 Mass. App. Ct. at 178, and

---

[18]The statement in the certification ruling, that "[s]ome, but not all of these [remaining] issues, may become moot" by a decision on this appeal, appears inconsistent with the explicit recognition therein that the central issues in the consolidated litigation — "the fact and extent of the adverse possession [claimed by the homeowners]" — remain to be tried.

[19]When the trial court "so specifies the bases for its decision, then . . . [its] discretion . . . will be accorded great deference." *Consolidated Rail Corp.*, 861 F.2d at 326.

cases cited; and we have pointedly admonished that "[t]he failure to make [such] explanatory findings can result in dismissal of the appeal from a separate judgment." *High-Tech Sales, Inc.* v. *Olektron Corp.*, 31 Mass. App. Ct. at 914.

The findings that accompanied the entry of partial judgment here did not constitute the clear articulation of the reasons and factors that are predicates for entry of a certifiable judgment under rule 54(b). We discern no balancing of the competing purposes underlying rule 54(b), or evaluation of the inter-relationship between the legal and factual issues raised by the dismissed and the pending claims, or identification and weighing of the relevant "equities" for and against an immediate appeal. The two factors that were mentioned did not give support to the conclusion that the partial judgment was properly certifiable (see *supra* at 383-385, 396, 397-398, notes 14-15) and were inconsistent with the explicit perceptions that the central issue in the consolidated case was the conflicting claims to ownership of the locus; that all of the proof required to establish the homeowners' sole legal contention — title by adverse possession — as well as the appellees' basis for asserting their title over the locus remained to be developed; and that the rival claims and counterclaims, both partially adjudicated and pending, were so intertwined as to be "mirror images of one another."

*Conclusion.* A rule 54(b) certification must be the product of independent, comprehensive and detailed analysis of the relevant factors established in the case law. Trial judges fulfill their function as the requisite discerning "dispatcher" in such situations only by exercising discretion unambiguously "in the interest of sound judicial administration," *Sears, Roebuck & Co.* v. *Mackey*, 351 U.S. at 435, 437, by preventing relaxation of "the rigorous standards that ought to be associated with Rule 54(b) certifications," *Nichols* v. *Cadle Co.*, 101 F.3d at 1449 n.3, and by insuring that the rule continues to be "used sparingly." *Id.* at 1449.

We see "[n]othing in the papers before us suggest[ing] a pressing, exceptional need for immediate appellate intervention, or grave injustice of the sort remediable only by allowing an appeal to be taken forthwith, or dire hardship of a unique kind." *Spiegel* v. *Trustees of Tufts College*, 843 F.2d at 45-46. The parties, who have presumably proceeded with discovery and trial preparation on the extensive remainder of the case, will have their full day in the Land Court on all relevant issues and will

be able to pursue a proper appeal thereon to this court, if necessary, following a decision finally disposing of all claims.

The appeal is dismissed. The certification and entry, pursuant to Mass.R.Civ.P. 54(b), of the partial judgment for the appellees on the color of title issue are, accordingly, vacated; the order on summary judgment is restored to its interlocutory status under the second sentence of rule 54(b); and the case is remanded to the Land Court for further proceedings consistent with this opinion.

*So ordered.*